15-2037-cv
*Kovaco v. Rockbestos-Surprenant Cable Corp.*

# In the
# United States Court of Appeals
## For the Second Circuit

————

AUGUST TERM 2015
No. 15-2037-cv

JOSIF KOVACO,
*Plaintiff-Appellant,*


*v.*


ROCKBESTOS-SURPRENANT CABLE CORPORATION,
*Defendant-Appellee.*

————

Appeal from the United States District Court
for the District of Connecticut

————

ARGUED: MAY 13, 2016
DECIDED: AUGUST 22, 2016

————

Before: NEWMAN, CABRANES, and LOHIER, *Circuit Judges*.

————

The principal question presented is whether the United States District Court for the District of Connecticut (Warren W. Eginton, *Judge*) erred in holding that, as a result of certain factual

representations plaintiff made to the Social Security Administration in successfully obtaining Social Security Disability Insurance benefits, plaintiff was judicially estopped from asserting that he was qualified for his position with his employer, and that he was therefore unable to establish a *prima facie* case of discriminatory discharge under the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, and the Age Discrimination in Employment Act.

We conclude that, although the District Court's explanation was erroneous, the District Court correctly held that plaintiff was judicially estopped and that plaintiff consequently failed to establish a *prima facie* case of discriminatory discharge on summary judgment. Accordingly, because defendant is entitled to summary judgment on plaintiff's discriminatory-discharge claims, and because we conclude that plaintiff's other challenges are unpersuasive, we **AFFIRM** the judgment of the District Court, except that we **DISMISS** for want of appellate jurisdiction plaintiff's appeal of so much of the judgment as related to his claim under the Connecticut Fair Employment Practices Act.

Judge LOHIER joins fully in the judgment of the Court and files a concurring opinion.

———

MICHAEL J. REILLY (Angelo Cicchiello, *on the brief*), Cicchiello & Cicchiello, LLP, Hartford, CT, *for Plaintiff-Appellant*.

2

SUSAN R. OXFORD, Attorney (P. David Lopez, General Counsel, Jennifer S. Goldstein, Associate General Counsel, Barbara L. Sloan, Acting Assistant General Counsel, *on the brief*), *for Amicus Curiae* Equal Employment Opportunity Commission, Washington, DC, *in support of Plaintiff-Appellant*.

JEFFREY R. BABBIN (Lawrence Peikes, *on the brief*), Wiggin and Dana LLP, New Haven, CT, *for Defendant-Appellee*.

————

JOSÉ A. CABRANES, *Circuit Judge*:

Plaintiff-appellant Josif Kovaco ("Kovaco") appeals from a judgment of the United States District Court for the District of Connecticut (Warren W. Eginton, *Judge*) in part granting summary judgment to his former employer, defendant-appellee Rockbestos-Surprenant Corporation ("Rockbestos"), on his claims of hostile work environment and discriminatory discharge.

In his amended complaint, Kovaco alleged that he had been harassed at work and that his employment was terminated by Rockbestos based on his disability, Romanian national origin, and age, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (the "ADEA"), and the

Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 ("CFEPA").

On September 25, 2013, the District Court granted partial summary judgment to Rockbestos.[1] The District Court held that Kovaco could not establish a *prima facie* case of discriminatory discharge under the ADA, Title VII, the ADEA, and CFEPA, because he was estopped from asserting that he was qualified for his position as a maintenance mechanic at the time his employment was terminated, due to certain factual representations he had made to the Social Security Administration ("SSA") in successfully obtaining Social Security Disability Insurance ("SSDI") benefits. The District Court did not address Kovaco's purported hostile-work-environment claims, which on appeal Rockbestos contends Kovaco never pleaded, and the District Court denied summary judgment with respect to Kovaco's remaining claims, which were later unsuccessfully tried to a jury. Following the trial, Kovaco filed the instant appeal, challenging the District Court's September 2013 decision granting partial summary judgment to Rockbestos.

On appeal, Kovaco argues that the District Court erred when it (1) misapplied controlling case law in holding that, due to his representations to the SSA and the SSA's disability determination, he could not prove he was qualified for his position as of March 29, 2010, the date when his employment was terminated; and (2)

---

[1] *See Kovaco v. Rockbestos-Surprenant Cable Corp.*, 979 F. Supp. 2d 252 (D. Conn. 2013).

overlooked Kovaco's hostile-work-environment claims in its decision granting partial summary judgment to Rockbestos, claims that do not turn on Kovaco's qualification.

As a threshold matter, we hold that we lack appellate jurisdiction to review so much of the District Court's judgment as involves Kovaco's CFEPA claim.

With respect to Kovaco's discriminatory-discharge claims brought under the ADA, Title VII, and the ADEA, we conclude that, although the District Court's explanation of why Kovaco was judicially estopped from asserting that he was qualified for his position was erroneous, the decision was nevertheless correct because Kovaco failed to proffer a sufficient explanation in light of the record why his assertion that he was qualified for his position was consistent with his earlier sworn statement to the SSA that he was "unable to work." As a result, we agree with the District Court that Kovaco failed to establish a *prima facie* case of discriminatory discharge on summary judgment under the ADA, Title VII, and the ADEA.

Finally, we hold that to the extent Kovaco pleaded hostile-work-environment claims in his amended complaint, he subsequently abandoned those claims in opposing Rockbestos's motion for summary judgment in the District Court by failing to address them in his brief.

Accordingly, we **AFFIRM** the judgment of the District Court in its entirety, except that we **DISMISS** for want of appellate

5

jurisdiction plaintiff's appeal of so much of the judgment as related to his CFEPA claim.

## BACKGROUND

Rockbestos hired Kovaco in April 2005 to work as a maintenance mechanic at its East Granby, Connecticut, manufacturing facility. As a maintenance mechanic, Kovaco was responsible for maintenance and repair of Rockbestos's machinery.

Kovaco contends that, beginning in 2008, he was subjected to discrimination at Rockbestos on the basis of his Romanian national origin. Sometime in or around the summer of 2008, Kovaco was transferred to a new shift. Shortly after he switched shifts, several of his new coworkers began making derogatory comments about his having been born in Romania. For instance, several coworkers called him names, such as "Romanian Gypsy" or "third-world countryman," and made remarks like "go back to Romania." One coworker also drew derogatory pictures of Kovaco with exaggerated features, one of which was labeled "old shit man." Kovaco testified that he complained to management, but to no avail. Rockbestos declined to investigate his complaints and refused to discipline the accused employees.

In early December 2009, Kovaco sought treatment for a deteriorating medical condition in his legs and feet and provided his supervisor, Greg Miller, with a note from his doctor recommending certain light-duty restrictions. Later the same day, Kovaco met with Miller and human resources as well as his shift supervisor to discuss

6

a potential accommodation consistent with the recommendations of Kovaco's doctor. Kovaco suggested during the meeting that he would be able to perform his job functions if he had access to an electric cart as needed. Even before Kovaco notified Rockbestos of his medical condition, Rockbestos had provided Kovaco and members of the Maintenance Department with five electric carts and a forklift, along with keys to each, to facilitate their navigation of the 500,000 square feet of workspace that comprised the four-building plant. Miller and the others confirmed that Kovaco would have access to one of the electric carts as needed.

Kovaco continued to experience medical problems and took leave in January 2010 under the Family Medical Leave Act ("FMLA"). Upon his return the next month, he provided a new doctor's note to Miller that again recommended light-duty restrictions. Kovaco testified that Miller threw the note on the ground and stated, "I don't need one other handicap in my shop."[2] Kovaco remained on light duty and continued to use an electric cart as necessary until his termination in March 2010.

During the night shift on March 19 and 20, 2010, Kovaco had trouble locating an electric cart to use. Earlier in the day, Miller had been advised that one of the carts had a defective battery that was unable to hold a charge, and he therefore directed a member of his maintenance staff to place an Occupational Safety and Health Administration ("OSHA") "lock out" tag on the cart and move it to

---

[2] J.A. 731. "J.A." refers to the Joint Appendix.

the boiler room. When Kovaco learned that a cart was in the boiler room, he entered the locked boiler room, examined the cart, and decided that the cart was functional. He then removed the OSHA "lock out" tag so that he could use the cart for the remainder of his shift. The cart's battery subsequently died, and Kovaco abandoned the cart before concluding his shift. When Miller questioned Kovaco on the morning of March 20, Kovaco denied having taken the cart. On March 23, 2010, Kovaco confessed that he had taken the cart, and Rockbestos suspended him pending further investigation, until March 29, 2010.

On March 25, 2010, while he was serving his suspension, Kovaco filed an application with SSA for SSDI benefits. In his SSA application, Kovaco indicated that he had rheumatoid arthritis, degenerative arthritis, and bone spurs in both feet; soft tissue in both ankles; and severe gout. He represented that each day at Rockbestos he had spent 7.5 hours per day walking, .5 hours per day sitting, and 1 hour per day climbing; and that he had to lift and carry tools weighing about 40 pounds and as heavy as 120 pounds. He indicated that he had "stopped working" on March 24, 2010 "[b]ecause of [his] conditions" and that he "became unable to work."[3] He also stated that he felt that he "was discriminated against because [he] couldn't do [his] job well."[4]

---

[3] J.A. 121–23.

[4] J.A. 123.

On March 29, 2010, Rockbestos management met with Kovaco and a union representative to discuss the incident involving the cart, after which Rockbestos informed Kovaco that his employment would be terminated due to his violation of company policy.

In June 2010, SSA determined that Kovaco had been "disabled" under the Social Security Act beginning March 24, 2010, five days before his employment was terminated by Rockbestos. In its "Disability Determination Explanation," the SSA discussed Kovaco's medical conditions and stated, among other findings and conclusions, that "[p]hysical limitations prevent [Kovaco] from performing his past relevant work," including that he "has a severe impairment[ ] that limits him[ ] to no more than sedentary work," and that he can "occasionally" lift or carry no more than twenty pounds of weight at a time.[5]

Kovaco filed the instant action against Rockbestos in March 2011 and filed a nine-count amended complaint in June 2011, setting forth several claims ranging from federal employment discrimination to state-law conversion.

The District Court granted partial summary judgment to Rockbestos on September 25, 2013. Specifically, the District Court granted summary judgment to Rockbestos on Kovaco's discriminatory-discharge claims, brought under the ADA, Title VII, the ADEA, and CFEPA; FMLA claims; and a claim for intentional

---

[5] J.A. 114–17.

9

infliction of emotional distress. The District Court denied summary judgment on the retaliation claims, brought under the ADA, Title VII, the ADEA, and CFEPA; the failure-to-accommodate claims, brought under the ADA and CFEPA; and the theft claims. Rockbestos ultimately prevailed on these remaining claims at trial. Following the District Court's entry of judgment for Rockbestos on May 29, 2015, Kovaco filed the instant appeal, challenging the District Court's grant of partial summary judgment to Rockbestos.

## DISCUSSION

### I. Appellate Jurisdiction

As a threshold matter, we must consider whether we have appellate jurisdiction to review certain of the challenges set forth in Kovaco's appellate brief. Rockbestos contends that Kovaco failed to include his hostile-work-environment claims and his CFEPA claim in the notice of appeal, and that we consequently lack appellate jurisdiction to review his challenges regarding these claims. In sum, we hold that we have appellate jurisdiction to review the District Court's decision with respect to the hostile-work-environment claims, but not the CFEPA claim.

Under Rule 3(c)(1)(B) of the Federal Rules of Appellate Procedure, which is "jurisdictional in nature,"[6] an appellant's "notice of appeal must . . . designate the judgment, order, or part

---

[6] *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 93 (2d Cir. 2014) (quoting *Gonzalez v. Thaler*, 132 S. Ct. 641, 652 (2012)).

thereof being appealed."[7] This standard is not exacting. Notices of appeal are to be "construe[d] . . . liberally, taking the parties' intentions into account."[8] Nevertheless, "our appellate jurisdiction 'depends on whether the intent to appeal from a decision is clear on the face of, or can be inferred from, the notice[ ] of appeal.'"[9]

Kovaco's notice of appeal read in pertinent part as follows:

Kovaco . . . hereby appeals . . . from an Order granting Summary Judgment on Plaintiff's claims of discrimination under the Americans with Disabilities Act[,] 42 U.S.C. § 12101, Title VII of the Civil Rights Act of 1964[,] 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act[,] 29 U.S.C. § 621–634, as well as his claims for back pay and front pay, . . . . [which] was entered in this action on the 25th day of September, 2013. Judgment became final on May 29, 2015.[10]

---

[7] Fed. R. App. P. 3(c)(1)(B).

[8] *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 65 (2d Cir. 2008) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 256 (2d Cir. 1995)).

[9] *Id.* at 65–66 (brackets omitted) (quoting *New Phone Co. v. City of New York*, 498 F.3d 127, 131 (2d Cir. 2007)).

[10] J.A. 1169. We note that although Kovaco stated in his notice of appeal that he "appeals . . . from an Order," we construe this in the circumstances presented to mean that he appeals from the May 29, 2015 judgment and, on that appeal, seeks review of that order.

11

We conclude that Kovaco's notice of appeal sufficiently manifested his intent to seek review of so much of the judgment as involved his hostile-work-environment claims brought under the ADA, Title VII, and the ADEA.[11] The notice aptly described the claims as "discrimination" claims, listed the statutes under which Kovaco brought the claims, noted the specific disposition of the claims by the District Court, and identified by date the order in which the District Court announced the disposition. We can infer from this description—and the absence of any exclusionary or restrictive language therein—that Kovaco had intended to appeal the grant of summary judgment to Rockbestos with respect to *all* of his discrimination-based claims brought under the named statutes, including the hostile-work-environment claims. Accordingly, these claims are properly before us on appeal.

Kovaco's notice of appeal did *not* manifest his intent, however, to seek review of so much of the judgment as involved his CFEPA claim. The notice failed to identify or describe the CFEPA claim in any way. Although the notice identified by date the order in which the District Court disposed of the CFEPA claim, it did so only in reference to the claims brought under federal discrimination statutes. Further, the notice included no language evincing Kovaco's

---

[11] Although we note that the parties dispute whether Kovaco pleaded these claims in his amended complaint, we assume that he did so for purposes of deciding whether we have appellate jurisdiction.

intent to appeal from the *entire* order.[12] Consequently, even construing the notice of appeal liberally, we cannot infer from the notice that Kovaco had intended to seek review of the grant of summary judgment to Rockbestos with respect to his CFEPA claim.[13] Indeed, although "we may construe the rules [of appellate procedure] liberally, we do not have the authority to waive the jurisdictional requirements of [Rule 3(c)(1)(B)]," and "our jurisdiction is limited by the wording of the notice."[14]

Accordingly, because we lack jurisdiction over the CFEPA claim, Kovaco's appeal of so much of the judgment as involved his CFEPA claim must be dismissed.

---

[12] *See City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 453 (2d Cir. 2008) (distinguishing between a notice of appeal in which "the [appellant] appealed from 'each and every part' of the final judgment," which evinced intent to appeal from the entire judgment, and notices of appeal that "generally specified certain aspects of an order or judgment, or particular orders, but not others, [and where] intent to appeal from the *entire* final judgment could not be inferred" (emphasis in original)), *rev'd on other grounds*, *Hemi Grp., LLC v. City of New York*, 559 U.S. 1 (2010).

[13] *See Kowsh v. Bd. of Elections of City of N.Y.*, 99 F.3d 78, 80 (2d Cir. 1996) (holding that a notice of appeal stating that plaintiffs appealed "from the [judgment of the district court] reversing the [report and recommendation of the magistrate judge] that an injunction be issued" meant that "only so much of the district court's judgment as denied [the] injunction . . . is properly before us," notwithstanding challenges to other rulings set forth in plaintiffs' brief).

[14] *New Phone Co.*, 498 F.3d at 130.

13

## II.       Discriminatory-Discharge Claims

We turn now to Kovaco's principal argument on appeal, which is that the District Court misapplied controlling case law in holding that, due to his representations to the SSA and the SSA's disability determination, he could not prove he was qualified for his position as of March 29, 2010, the date when his employment was terminated by Rockbestos.

"We review the district court's grant of summary judgment *de novo*, construing the evidence in the light most favorable to the non-moving party."[15]

For the reasons set forth below, we conclude that, although the District Court's explanation of why Kovaco was judicially estopped from asserting that he was qualified for his position was erroneous, the decision was nevertheless correct. Specifically, Kovaco was judicially estopped because he failed to proffer a sufficient explanation of why his assertion that he was qualified for his position was consistent with his earlier sworn statement to the

---

[15] *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000). Although "[w]e have expressed some question as to whether the standard of review for a ruling on judicial estoppel should be *de novo* or abuse of discretion," *Chevron Corp. v. Donziger*, No. 14-0826, 2016 WL 4173988, at *44, --- F.3d --- (2d Cir. Aug. 8, 2016), the parties do not argue which standard applies, and we need not decide the question here, where we confront only a legal question that must be reviewed *de novo* under both standards, *see United States v. Legros*, 529 F.3d 470, 474 (2d Cir. 2008) ("The abuse-of-discretion standard incorporates *de novo* review of questions of law . . . .").

SSA that he was "unable to work."[16] As a result, we agree with the District Court that Kovaco failed to establish a *prima facie* case of discriminatory discharge on summary judgment under the ADA, Title VII, and the ADEA.

### A. Overview of the Qualification Element under the ADA, Title VII, and the ADEA

We analyze employment-discrimination claims under the ADA, Title VII, and the ADEA using the now-familiar burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, a plaintiff must first establish a *prima facie* case of discrimination, which causes the burden of production to shift to the defendant to offer a legitimate, nondiscriminatory rationale for its actions.[17] "If the defendant satisfies its burden of production, then the presumption raised by the prima facie case is rebutted and drops from the case," such that "[a]t the final stage, the plaintiff then has

---

[16] We "may affirm the judgment of the district court on any ground appearing in the record." *Konikoff*, 234 F.3d at 98 (internal quotation marks omitted).

[17] *See, e.g.*, *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 151 (2d Cir. 2012) (Title VII); *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (the ADA); *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) (the ADEA).

the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision."[18]

To establish a *prima facie* case under the ADA, Title VII, and the ADEA, a plaintiff must show, *inter alia*, that he was qualified for the position he held at the time of termination.[19] In opposing a defendant's motion for summary judgment, "a plaintiff may satisfy this burden by showing that she possesses the basic skills necessary for performance of the job."[20] Therefore, "especially where discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw."[21] Notably, the qualification prong under the ADA differs from the qualification prong under Title VII and the ADEA, in that the plaintiff must show under the ADA that he is "qualified to perform

---

[18] *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012) (internal quotation marks omitted).

[19] *See Chin*, 685 F.3d at 151 (Title VII); *Sista*, 445 F.3d at 169 (the ADA); *Abdu-Brisson*, 239 F.3d at 466 (the ADEA).

[20] *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 45 (2d Cir. 2015) (brackets and internal quotation marks omitted).

[21] *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001) (explaining, in the context of an ADEA claim, that "[t]he qualification prong must not . . . be interpreted in such a way as to shift onto the plaintiff an obligation to anticipate and disprove, in his *prima facie* case, the employer's proffer of a legitimate, non-discriminatory basis for its decision" and noting that "the qualification necessary to shift the burden to defendant for an explanation of the adverse job action is minimal").

the essential functions of his job, *with or without reasonable accommodation.*"[22]

Unlike typical discriminatory-discharge cases in which a defendant's motion for summary judgment is before the court for consideration, however, this case presents the question not of whether a plaintiff established that there was at least a genuine dispute of fact as to his qualification for purposes of establishing his *prima facie* case, but rather whether he was judicially estopped from asserting that he was qualified.

### B. The District Court's Judicial Estoppel Analysis

The District Court appears to have held that Kovaco was judicially estopped from asserting that he was qualified for his position as of March 29, 2010 due to factual representations in his SSA application and factual findings and conclusions by the SSA in determining that he was disabled as of March 24, 2010. The District Court did not use the term "judicial estoppel," but both cases relied upon by the District Court turn on judicial estoppel, and the District Court's singular focus on the SSA proceeding to the exclusion of other evidence bolsters this conclusion.[23] We therefore consider

---

[22] *Sista*, 445 F.3d at 169 (internal quotation marks omitted) (emphasis supplied); *see also* 42 U.S.C. § 12111(8) (defining "qualified individual" in part to mean "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires").

[23] *See Kovaco*, 979 F. Supp. 2d at 259 (citing *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1 (2d Cir. 1999); *Nieman v. Syracuse Univ. Office of Human Res.*,

whether the District Court properly applied controlling case law in reasoning that Kovaco was judicially estopped from asserting that he was qualified for his position.

"Judicial estoppel applies to sworn statements made to administrative agencies such as the Social Security Administration as well as to courts."[24] We explained in *Robinson v. Concentra Health Services, Inc.*, a case that similarly involved a successful SSA disability applicant who later pursued an employment-discrimination claim against his employer, that "[j]udicial estoppel prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by that party in a prior legal proceeding."[25] To establish judicial estoppel, a party "must show that (1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was adopted by the first tribunal in some manner, such as by rendering a favorable judgment."[26]

---

No. 5:12-CV-732 (MAD/TWD), 2013 WL 2445098 (N.D.N.Y. June 5, 2013)). A corollary of this conclusion is that, if the District Court had not ruled based on a judicial estoppel theory, then the Court erred in overlooking other evidence that could have created a genuine dispute of fact as to whether Kovaco was qualified for his position. This is unlikely.

[24] *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010).

[25] 781 F.3d at 45 (brackets and internal quotation marks omitted).

[26] *Id.* (internal quotation marks omitted).

In *Cleveland v. Policy Management Systems Corp.*, the Supreme Court defined the contours of judicial estoppel in a case where, as here, the plaintiff had stated in her SSA application that she was totally disabled, and also brought claims against her former employer under the ADA asserting that she had been qualified for her position.[27] Rejecting the argument that these claims were inherently inconsistent, the Court explained that "there are . . . many situations in which an SSDI claim and an ADA claim can comfortably exist side by side."[28] For example, the Court explained that a "qualified individual" under the ADA includes a person who can perform the essential functions of her job with reasonable accommodation, whereas disability under the Social Security Act does not take into account the possibility of reasonable accommodation.[29] As a result, "an ADA suit claiming that the plaintiff can perform her job *with* reasonable accommodation may well prove consistent with an SSDI claim that the plaintiff could not perform her own job (or other jobs) *without* it."[30]

---

[27] 526 U.S. 795 (1999).

[28] *Id*. at 802–03.

[29] *Id.* at 803; *see also* 42 U.S.C. § 423(d)(1)(A) (defining "disability" in part to mean "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months").

[30] *Cleveland*, 526 U.S. at 803. Among other examples of how the two claims could be consistent, the Supreme Court explained that "the nature of an individual's disability may change over time, so that a statement about that

But the Supreme Court also recognized that "in some cases an earlier SSDI claim may turn out genuinely to conflict with an ADA claim," observing that "a plaintiff's sworn assertion in an application for disability benefits that she is, for example, 'unable to work' will appear to negate an essential element of her ADA case—at least if she does not offer a sufficient explanation."[31] The Court therefore held that "an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation."[32] The Court concluded: "To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.'"[33]

---

disability at the time of an individual's application for SSDI benefits may not reflect the individual's capacities at the time of the relevant employment decision." *Id.* at 805.

[31] *Id.* at 805–06.

[32] *Id.* at 806.

[33] *Id.* at 807. The Court in *Cleveland* emphasized that the case did not involve "directly conflicting statements about purely factual matters, such as 'The light was red/green,' or 'I can/cannot raise my arm above my head.'" *Id.* at 802. The Court explained that "[a]n SSA representation of total disability differs from a purely factual statement in that it often implies a context-related legal conclusion, namely, 'I am disabled for purposes of the Social Security Act.'" *Id.* The Court noted that it "consequently leaves the law related to the former, purely factual, kind of conflict where [the Court] found it." *Id.; see DeRosa*, 595

Here, Kovaco proffered an explanation on summary judgment as to how his sworn statement in his SSA application that he was "unable to work" as of March 24, 2010 did not "negate [the] essential element of [his] ADA case" that he was qualified for his position on March 29, 2010.[34] Like the plaintiff in *Cleveland*, Kovaco explained that he was disabled within the meaning of the Social Security Act on March 24, 2010, but that he nevertheless was qualified under the ADA on March 29, 2010, because he would have been able to perform his essential job functions on that date if he had reasonable accommodation in the form of an electric cart.[35] The necessary implication of this explanation is that Kovaco was "unable to work" beginning March 24, 2010 only because he did *not* have access to an electric cart. The District Court rejected this explanation, however, concluding that "[a]n electric cart would not remedy the majority of [his] job-related deficiencies."[36] The Court cited the factual representations in Kovaco's SSA application regarding the physical demands of his job, as well as the SSA's factual findings and conclusions that Kovaco was "fit only for sedentary work and [was] limited to occasionally lifting up to twenty pounds."[37] On this basis,

---

F.3d at 103 ("*Cleveland* therefore did not displace traditional estoppel analysis where the issue with respect to a plaintiff's prior statements is a purported factual contradiction.").

[34] *Cleveland*, 526 U.S. at 806.

[35] J.A. 390–91.

[36] *Kovaco*, 979 F. Supp. 2d at 259.

[37] *Id.*

the District Court held that Kovaco could not establish that he was qualified for his position with reasonable accommodation, under the ADA, nor under Title VII and the ADEA, "as reasonable accommodation is not implicated" by these statutes.[38]

We conclude that the District Court erred in holding that the SSA's factual findings and conclusions that Kovaco was "fit only for sedentary work and [was] limited to occasionally lifting up to twenty pounds," in conjunction with Kovaco's factual statements to the SSA about the more onerous physical demands of his job, judicially estopped him from asserting that he would have been qualified to perform his essential job functions if he had reasonable accommodation.

First, the SSA's specific factual findings and conclusions have no estoppel effect insofar as they appear to be untethered to any specific position taken by Kovaco before the SSA. In his SSA application, Kovaco described his medical conditions and diagnoses, as well as the physical demands of his position, and concluded that he was "unable to work" and that he had stopped working on March 24, 2010 "[b]ecause of [his] conditions."[39] But he did not assert or otherwise suggest that he could lift only twenty pounds of weight or that he was unable to walk or stand and was capable of only sedentary work. This is not to say that the SSA's ultimate

---

[38] *Id.*

[39] J.A. 120–29.

determination was irrelevant. Indeed, for Kovaco to have been judicially estopped, his earlier position before the SSA must have been "adopted by the [SSA] in some manner, such as by rendering a favorable judgment."[40] But this does not mean that Kovaco is estopped from taking a position inconsistent with the SSA's position where Kovaco had not taken the position himself.[41] Judicial estoppel does not reach so far.

Second, even if Kovaco were estopped from taking a position clearly inconsistent with the SSA's position that he was "fit only for sedentary work and is limited to occasionally lifting up to twenty pounds," this would not preclude Kovaco from taking the *different* position that he could perform his essential job functions with reasonable accommodation. "We have cautioned . . . that before applying judicial estoppel to factual claims in ADA cases, a court must carefully consider the contexts in which apparently contradictory statements are made to determine if there is, in fact, direct and irreconcilable contradiction."[42] If Kovaco could perform

---

[40] *Robinson*, 781 F.3d at 45 (internal quotation marks omitted).

[41] *See Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 119 (2d Cir. 2004) ("The law in this circuit recognizes that when *an individual's prior submission* regarding his disability to an adjudicatory body contains a purely factual statement that directly contradicts a statement made in a subsequent ADA claim, and the two cannot be reconciled with any amount of explanation, judicial estoppel will preclude the ADA claim." (brackets and internal quotation marks omitted) (emphasis supplied)).

[42] *DeRosa*, 595 F.3d at 103 (internal quotation marks omitted).

only sedentary work and lift only up to twenty pounds of weight, this is not "clearly inconsistent" with the possibility that Kovaco could meet the more onerous physical demands of his job with reasonable accommodation.[43] For example, with reasonable accommodation, he would not necessarily need to walk several hours a day—a demand of the job for those without reasonable accommodation—because he could use an electric cart to traverse the facility.

In sum, the District Court erred in reasoning that Kovaco was judicially estopped based on factual findings and conclusions by the SSA that do not appear to represent Kovaco's position before the SSA, and that in any event were not clearly inconsistent with his later assertion that he was qualified to perform the essential functions of his job with reasonable accommodation. As we discuss below, however, Kovaco is nevertheless judicially estopped for independent reasons.

---

[43] *See id.* (noting that judicial estoppel typically applies if, *inter alia*, "a party's later position is clearly inconsistent with its earlier position" (internal quotation marks omitted)); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 333 (2d Cir. 2000) ("[S]ummary judgment may be appropriate under *Cleveland* where the SSDI and ADA claims involve directly conflicting statements about purely factual matters." (internal quotation marks omitted)). The purported factual contradiction here would be unlike that in *Mitchell v. Washingtonville Central School District*, where we held that the plaintiff—who had previously stated to the SSA that he was incapable of standing or walking and that he required work that could be performed seated—was judicially estopped from taking the contrary factual position in support of his ADA claim that he *could* walk and stand and was thus qualified for his position. 190 F.3d at 7–8.

### C. Why Kovaco Is Judicially Estopped from Establishing That He Was Qualified For His Position

Although the District Court's explanation was erroneous, its decision that Kovaco was estopped from asserting that he was qualified was nevertheless correct. As noted above, the explanation proffered by Kovaco was that he was unable to work for purposes of the Social Security Act, but that he was nonetheless qualified to work if he had reasonable accommodation in the form of an electric cart, implying that he lacked an electric cart when he stated he was "unable to work." The evidence adduced on summary judgment, however, conclusively establishes that Kovaco had an electric cart during his shifts when he stated to the SSA that he was "unable to work," belying his explanation that he was only "unable to work" because he lacked reasonable accommodation. In other words, although an explanation like Kovaco's might be sufficient to defeat summary judgment in other circumstances—such as those presented in *Cleveland*[44]—it fails to defeat Rockbestos's motion for summary

---

[44] *See Cleveland*, 526 U.S. at 803 ("The result is that an ADA suit claiming that the plaintiff can perform her job *with* reasonable accommodation may well prove consistent with an SSDI claim that the plaintiff could not perform her own job (or other jobs) *without* it." (emphasis in original)); *see also Parker*, 204 F.3d at 333–34 (concluding that plaintiff's "statement in his SSDI application that he 'became unable to work' . . . and that he was 'still disabled' does not dictate the factual conclusion that he was incapable of returning . . . with other accommodation," noting also that "*Cleveland* . . . gives ADA plaintiffs wide latitude to overcome apparent conflicts between their SSDI applications and their statements alleging discriminatory discharge").

judgment on the record before us, which makes clear that Kovaco's later assertion is inconsistent with his sworn statement to the SSA.

The record shows that Kovaco indisputably was able to use an electric cart as necessary during his shifts leading up to his suspension on March 23, 2010, notwithstanding his subsequent statement to the SSA during his suspension that he was "unable to work."[45] The jury verdict in favor of Rockbestos on Kovaco's failure-to-accommodate claims confirmed this fact. The District Court instructed the jury that it "must determine whether defendant accommodated plaintiff by taking reasonable steps to ensure that an electric cart was available for his use as needed."[46] In its special verdict form, the jury indicated that Kovaco had *not* proved that Rockbestos "failed to provide him with a reasonable accommodation for his medical restrictions with respect to climbing and walking,"[47] a finding that Kovaco does not challenge on appeal. Finally, perhaps in light of the weight of evidence and the subsequent jury verdict, Kovaco has conceded on appeal that he

---

[45] For example, when asked during his deposition whether he was able to use the electric cart during the third shift which he worked, Kovaco responded, "Every night for the last three weeks before I got fired, yes." J.A. 173–74. In response to a similar question about whether he had used a particular cart previously, Kovaco responded, "Oh, yes. Every day for the last two weeks, because I went on third shift. Every day I was using it." J.A. 155.

[46] J.A. 1156.

[47] J.A. 1143.

"agrees that he was able to successfully perform his job duties with the use of a cart from December 2009 through March 19, 2010."[48]

Based on the foregoing, Kovaco's explanation of the apparent contradiction between his sworn statement to the SSA that he was "unable to work" beginning March 24, 2010, and his assertion in support of his discriminatory-discharge claims that he was nonetheless qualified to perform his essential job functions when his employment was terminated on March 29, 2010, is insufficient to defeat summary judgment. A reasonable juror who assumes the truth of Kovaco's sworn statement that he was "unable to work" beginning March 24, 2010, despite conclusive evidence that Kovaco was able to use an electric cart as necessary, cannot also believe Kovaco's explanation that five days later, on March 29, 2010, he could nonetheless perform the essential functions of his job if only he had access to a cart. In light of the evidence on the record before us, the explanation proffered by Kovaco does *not* reconcile the

---

[48] Pl. Suppl. Br. 1, ECF No. 92. By circumscribing this concession to the time period between December 2009 and March 19, 2010—even though he was not suspended until March 23, 2010—Kovaco seems to imply that he was denied an electric cart between March 20 and his suspension on March 23. To be sure, Kovaco appears to have had difficulty locating a cart during his shift on March 19–20, 2010, until he extricated the cart bearing the OSHA "lock out" tag from the boiler room, leading to his suspension. Kovaco testified during his deposition, however, that he was able to use a cart without exception in the weeks leading up to the March 29 termination of his employment, *see ante* note 45, which is consistent with the jury verdict on his failure-to-accommodate claims. He did not argue otherwise in his summary judgment brief or in his appellate brief, obviating the need for us to consider this implied argument.

apparent contradiction between his statement to the SSA and his current litigation position, and we conclude that the two positions are clearly inconsistent.[49]

We also reject Kovaco's explanation on appeal that "notwithstanding the Plaintiff's representation to the SSA, he continued to perform his job duties without issue through the date of the termination of his employment."[50] This assertion may be

---

[49] We do not mean to foreclose the possibility that a plaintiff such as Kovaco can avoid judicial estoppel where the evidence does not conclusively undermine his explanation. Nor do we mean to foreclose the possibility that Kovaco could have successfully proffered an explanation that he had a "good-faith belief" that he was unable to work beginning March 24, 2010, due to the perceived denial of reasonable accommodation, which belief turned out to be mistaken, or due to a mistaken diagnosis. *See Cleveland*, 526 U.S. at 807 ("To defeat summary judgment, th[e] explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, *or the plaintiff's good-faith belief in*, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.'" (emphasis supplied)); *see also Mitchell*, 190 F.3d at 6 n.2 ("We have recognized that judicial estoppel does not apply when the first statement resulted from a good faith mistake or unintentional error." (internal quotation marks omitted)). But these were not the explanations proffered by Kovaco, so we need not consider them here.

[50] Pl. Br. 35; *see id.* at 36 ("It was undisputed that the Plaintiff was able to perform his job up to the termination of his employment."); *id.* at 39 ("Plaintiff has set forth a significant factual basis in support of his claims that he was qualified for his job, with an accommodation, despite his representations to the SSA, by demonstrating that he continued to do his job up until the date of his termination . . . ."); *id.* at 41 ("[I]n light of the evidence that Plaintiff performed all of the duties of his job up to the date of his termination without accommodation . . . the Court should have denied Summary Judgment."); *see also* J.A. 136 (Kovaco deposition testimony suggesting that he was able to work when he applied for disability benefits).

true—especially in light of the evidence discussed above—but this position is clearly inconsistent with Kovaco's statement in his SSA application that he was "unable to work" during that same time period. If anything, this explanation, like the one advanced by the plaintiff in *Robinson*, "demonstrates only that [Kovaco's] statements to the SSA . . . may have been false, but does not sufficiently explain the contradiction between the statements [to the SSA] and [this new] litigation position."[51]

In sum, Kovaco has failed to proffer a sufficient explanation of how his assertion in support of his ADA, Title VII, and ADEA claims that he was qualified for his position on March 29, 2010 is not "clearly inconsistent" with his earlier sworn statement, adopted by the SSA, that he was "unable to work" beginning March 24, 2010, a period during which he was provided with reasonable accommodation.[52] As a result, we hold that Kovaco is judicially estopped from asserting that he could perform his essential job functions—with or without reasonable accommodation—at the time that his employment was terminated by Rockbestos. Accordingly,

---

[51] *Robinson*, 781 F.3d at 47; *see also Lee v. City of Salem*, 259 F.3d 667, 674 (7th Cir. 2001) ("*Cleveland*'s analysis suggests that an ADA plaintiff may not, simply by disavowing a prior claim of total disability, perform an about-face and assert that he is a 'qualified individual' who is capable of working. . . . [T]he plaintiff must proceed from the premise that his previous assertion of an inability to work was true, or that he in good faith believed it to be true, and he must demonstrate that the assertion was nonetheless consistent with his ability to perform the essential functions of his job.").

[52] *DeRosa*, 595 F.3d at 103 (internal quotation marks omitted).

we also hold that he has failed to establish a *prima facie* case of discriminatory discharge under the ADA, Title VII, and the ADEA, and we uphold the District Court's grant of summary judgment to Rockbestos on these claims.

### III. Hostile-Work-Environment Claims

We next consider Kovaco's contention that the District Court erroneously granted summary judgment to Rockbestos on his hostile-work-environment claims, brought under the ADA, Title VII, and the ADEA. We reject this contention as meritless because we conclude that, assuming *arguendo* that Kovaco pleaded such claims, he abandoned them at the summary judgment stage.

As an initial matter, the parties dispute whether Kovaco pleaded hostile-work-environment claims in his amended complaint.[53] Although we harbor doubt as to whether Kovaco adequately pleaded hostile-work-environment claims, we need not resolve this issue. Even if we assume that Kovaco pleaded hostile-work-environment claims, he abandoned them in the District Court by failing to argue that they should survive Rockbestos's motion for summary judgment.

In *Jackson v. Federal Express*, we held that when a counseled party moves for summary judgment, "a partial response [by the non-movant] arguing that summary judgment should be denied as

---

[53] *See* Pl. Br. 41–44; Def. Br. 46–49.

to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims."[54] We explained that "[p]leadings often are designed to include all possible claims or defenses, and parties are always free to abandon some of them."[55] And insofar as summary judgment "is known as a highly useful method of narrowing the issues for trial," it follows that "preparation of a response to a motion for summary judgment is a particularly appropriate time for a non-movant party to decide whether to pursue or abandon some claims or defenses."[56] Accordingly, "[g]enerally, but perhaps not always, a partial response reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others," and "a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."[57] If a district court so holds, it "should . . . include a finding of abandonment of undefended claims or defenses."[58]

Here, Rockbestos moved in November 2012 for summary judgment on all claims in the amended complaint. Kovaco protests that "it is clear that [Rockbestos] was seeking summary judgment

---

[54] 766 F.3d 189, 195 (2d Cir. 2014).

[55] *Id.* at 196.

[56] *Id.*

[57] *Id.* at 196, 198.

[58] *Id.* at 198.

31

only as it related to [his] claim of discriminatory discharge, and it was not seeking summary judgment as to [his] national origin, age, and disability hostile[-]work[-]environment claims."[59] But the plain language of Rockbestos's motion for summary judgment—which at the outset argues that Rockbestos is entitled to summary judgment on "each of plaintiff's claims"—belies this conclusion.[60] We thus treat Rockbestos's motion as one that requested summary judgment on *all* of the claims in Kovaco's amended complaint, including the purported hostile-work-environment claims.

In response to Rockbestos's global motion for summary judgment, Kovaco filed a brief in opposition, but the brief failed to support or even address the purported hostile-work-environment claims. In fact, the argument section of the brief specifically enumerates Kovaco's claims and argues extensively why each should survive summary judgment, but the brief is bereft of any *mention* of the purported hostile-work-environment claims, let alone argument why these claims should survive summary judgment.[61] Kovaco's motion for reconsideration similarly failed to mention the

---

[59] Pl. Br. 45.

[60] *See* J.A. 60 ("Defendant . . . hereby moves pursuant to Fed. R. Civ. P. 56 for an Order entering summary judgment in its favor as to the claims alleged in the Amended Complaint filed by plaintiff . . . in the above-captioned case."); J.A. 65 ("Because exhaustive discovery has revealed the absence of any genuine issue of material fact as to each of plaintiff's claims, summary judgment should enter for defendant on all counts.").

[61] *See* J.A. 386–417.

purported hostile-work-environment claims.[62] Kovaco did not raise the hostile-work-environment claims until four months after filing his motion for reconsideration and almost a year after filing his initial brief in opposition of summary judgment, when he finally filed a "supplemental memorandum" in support of reconsideration in which he argued that the District Court overlooked the claims.[63]

Applying *Jackson*, we hold that Kovaco abandoned in opposing summary judgment any hostile-work-environment claims he may have pleaded in his amended complaint. As discussed above, Rockbestos moved for summary judgment on all claims, and Kovaco opposed the motion with respect to all but the purported hostile-work-environment claims. In these circumstances, we infer from Kovaco's failure to mention the claims that he had abandoned them.[64]

---

[62] *See* J.A. 1107–19.

[63] Def. App. 1–7. The District Court "granted" the motion for reconsideration but, without addressing Kovaco's new arguments regarding his purported hostile-work-environment claims, indicated that it "adhere[d] to its previous decision to grant summary judgment on plaintiff's discrimination and front and back pay claims." J.A. 1142.

[64] *See Jackson*, 766 F.3d at 198. As noted above, ordinarily if a district court concludes that a plaintiff has abandoned a claim, the district court must "include a finding of abandonment of [the] undefended claims" in its decision. *Id.* Here, the District Court made no such finding, likely because it was unaware from the face of the amended complaint and the briefing prior to the supplemental motion for reconsideration that Kovaco had intended to plead hostile-work-environment claims. In any event, we are free to affirm on any ground appearing in the record,

## CONCLUSION

We have reviewed all of plaintiff's arguments on appeal and find them to be without merit. We thus **AFFIRM** the May 29, 2015 judgment of the District Court in its entirety, except that we **DISMISS** plaintiff's appeal of so much of the judgment as involved his CFEPA claim.

---

even if it is not one on which the District Court has rested its decision. *See Konikoff,* 234 F.3d at 97–98.

LOHIER, Circuit Judge, concurring:

I concur fully in the majority opinion. I write separately to reinforce an important point made by the Equal Employment Opportunity Commission in its amicus brief: A disabled plaintiff can demonstrate that he was qualified for the position under Title VII or the Age Discrimination in Employment Act (the "ADEA") by showing that he could perform the job with or without a reasonable accommodation. In other words, he "must show only that he possesse[d] the basic skills necessary for performance of [the] job." Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 91–92 (2d Cir. 2001) (quotation marks omitted). If this were not the rule, a disabled worker who performed his job with a reasonable accommodation would be unable to establish a prima facie case of discriminatory discharge under Title VII or the ADEA even if he were discharged based on his race, color, religion, sex, national origin, or age. As the majority opinion implicitly recognizes, Title VII, the ADEA, and the Americans with Disabilities Act together work to foreclose that possibility.