16-1275-cr
United States v. Caltabiano

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2016

(Argued: May 4, 2017          Decided: September 18, 2017)

Docket No. 16-1275-cr

————————————————————

UNITED STATES OF AMERICA,

*Appellee*,

v.

JOHN W. CALTABIANO, JR.,

*Defendant–Appellant.*[*]

————————————————————

Before:

WALKER, LYNCH, and LOHIER, *Circuit Judges*.

After a jury convicted John W. Caltabiano, Jr. on various fraud and theft charges, the United States District Court for the Northern District of New York (Mae A. D'Agostino, *Judge*) sentenced Caltabiano principally to 57 months' imprisonment. Caltabiano filed a notice of appeal stating that he appealed from the judgment of conviction. Elsewhere on the same notice of appeal form, he indicated that his appeal "concern[ed]" his "[s]entence only." Because the notice of appeal form stated Caltabiano's intent to appeal his

———————————

[*] The Clerk of Court is directed to amend the caption as set forth above.

judgment of conviction, and because his narrower designation of issues appeared only in an administrative section of the same form, we hold that our appellate jurisdiction extends to Caltabiano's challenges to both his conviction and sentence. Proceeding to the merits, we **AFFIRM**.

RAJIT S. DOSANJH (Jeffrey C. Coffman, *on the brief*), Assistant United States Attorneys, *for* Grant C. Jaquith, Acting United States Attorney for the Northern District of New York, Syracuse, NY, *for Appellee*.

MOLLY CORBETT (James P. Egan, *on the brief*), Research & Writing Attorneys, *for* Lisa A. Peebles, Federal Public Defender, Albany, NY, *for Defendant– Appellant*.

LOHIER, *Circuit Judge*:

A jury convicted John W. Caltabiano, Jr. on various counts of mail fraud, conspiracy to commit mail fraud, and theft of government property. The United States District Court for the Northern District of New York (Mae A. D'Agostino, *Judge*) sentenced Caltabiano principally to 57 months' imprisonment. Caltabiano timely filed a notice of appeal using a form designated "USCA-2 Form A," which we attach as Addendum A to this opinion. While the top section of the form stated that Caltabiano appealed from his judgment of conviction, Caltabiano also indicated in an

administrative section of the form that his appeal "concern[ed]" his "[s]entence only." Because the notice of appeal section of the form stated Caltabiano's intent to appeal his judgment of conviction, and not merely his sentence, and because his narrower designation of issues appeared only in an administrative section, we hold that our appellate jurisdiction extends to Caltabiano's challenges to both his conviction and sentence. Proceeding to the merits, we conclude that sufficient evidence supported Caltabiano's conviction on the mail fraud counts, that he waived his primary challenge to the District Court's jury instructions, and that his sentence was not procedurally unreasonable. We therefore **AFFIRM**.

**BACKGROUND**

I.    The Facts

We derive the following facts from the evidence adduced at trial, which we describe in the light most favorable to the Government, the prevailing party. See United States v. Silver, 864 F.3d 102, 106 n.4 (2d Cir. 2017).

On January 4, 2006, Caltabiano, a cement company employee, was injured at work when cement dust containing alkaline debris blew into his face, severely irritating his left eye. A supervisor arranged for Caltabiano to

be driven to the hospital. At the hospital, attendants treated Caltabiano's left eye, but he refused treatment for his right eye. Caltabiano returned to work the next day, and within eight days he was able to drive. Despite successful surgery the month following the accident, Caltabiano's left eye remained severely damaged, leaving him effectively with no vision in that eye. In the weeks following the accident, Caltabiano also started to complain about pain and blurry vision in his <u>right</u> eye, as well as extreme light sensitivity (a condition known as photophobia). Despite these complaints, Caltabiano's doctors were unable to detect any structural damage to that eye.

On April 21, 2006, Caltabiano applied for workers' compensation benefits by submitting a claim form to the New York State Workers' Compensation Board ("WCB"). On the form, Caltabiano claimed that "[b]oth eyes suffered alk[a]line burns" and that 25 percent of the vision in his right eye had been lost. Gov't App'x 15. Caltabiano's employer was insured against workers' compensation claims by Travelers Property Casualty Company of America ("Travelers"), which arranged for an independent medical examiner, Dr. Lawrence Perlmutter, to evaluate Caltabiano's claim. During the examination, Dr. Perlmutter observed that Caltabiano "appeared

4

to be in significant distress" and even insisted that the examination take place in the dark. Tr. 667. Although the examination showed no abnormality in the right eye, Caltabiano's subjective complaints about that eye and the manifest injury to his left eye prompted Dr. Perlmutter to conclude that Caltabiano was suffering from a temporary total disability. That conclusion in turn prompted the WCB to find that Caltabiano had suffered a temporary total disability resulting from an injury to both eyes, and to direct Travelers to pay Caltabiano's medical expenses as well as $400 per week in lost wage benefits.

In April 2006, Caltabiano separately applied to the Social Security Administration ("SSA") for disability benefits. His SSA application claimed that "both eyes [were] blind" and that he could not "go outside due t[o] sunlight." Gov't App'x 18. In a "Function Report" submitted to the New York State Division of Disability Determinations ("DDD"), the agency charged with making initial disability determinations for the SSA in New York, Caltabiano claimed he had "no vision" in sunlight and was unable to drive because he was "[b]lind." Def. Ex. 39. During a required psychological evaluation, Caltabiano again indicated that he was totally blind. Based on the Function Report and the evaluating psychologist's diagnosis, the SSA

determined in August 2006 that Caltabiano was disabled and awarded him disability benefits of $717 per month.

Although there was little doubt about the damage to his left eye, Caltabiano's claims of total blindness in both eyes were bogus. In September 2006, Travelers hired a private investigator who, over the course of several weeks, filmed Caltabiano engaged in activities like driving and shopping without sunglasses or assistance from others with no apparent difficulty seeing. Likewise, in April or May 2007, Caltabiano's brother saw him walking around during the day and driving without assistance.

In April 2008, armed with the investigator's report, Travelers arranged another examination with Dr. Perlmutter, during which Caltabiano was "extremely uncooperative" and refused to allow Dr. Perlmutter to examine his right eye. Def. Ex. 12.

In June 2008, after Caltabiano reasserted his claim of total blindness and his eligibility for disability benefits in an affidavit prepared at his direction by his girlfriend and submitted to the WCB, Travelers sought a hearing before the WCB to consider suspending Caltabiano's benefits. In anticipation of the hearing, Travelers' investigator again recorded Caltabiano driving and

shopping without difficulty.  At the hearing, Travelers revealed the existence of the video recordings, which clearly contradicted Caltabiano's claims.  As a result, the WCB eventually terminated Caltabiano's wage benefits.

Even then, Caltabiano persisted in claiming total disability.  Shortly after the WCB terminated his benefits, Caltabiano, with his girlfriend's help, submitted a continuing disability form to the SSA in which he claimed a "30% loss of vision" and "blurriness" in his right eye, as well as "severe migraines from being light sensitive."  Def. Ex. 63.  The form also asserted that Caltabiano found it hard to shop or drive by himself and that his family did all the driving and shopping for him.  In another Function Report to the DDD, Caltabiano represented that he no longer drove because he was blind in his left eye, suffered from double and blurred vision in his right eye, and wore sunglasses "[a]ll the time" "to keep lighting out as much as possible."  Def. Ex. 81.  And Caltabiano again lied to a DDD psychologist that he could neither see nor drive.  In February 2010 a DDD psychologist, aware of the investigator's video surveillance, reviewed Caltabiano's file and determined that he was not medically impaired.  The SSA ultimately notified Caltabiano

that he no longer qualified for disability benefits and that his disability had ceased as of October 17, 2006.

II.    Procedural History

Caltabiano and his girlfriend were indicted in 2014 on eleven charges. At trial, the Government proceeded on one count of conspiracy to commit mail fraud, five counts of mail fraud, and one count of theft of government property.  A jury convicted Caltabiano and his girlfriend on all seven counts. The District Court sentenced Caltabiano principally to 57 months' imprisonment.

**DISCUSSION**

I.    Appellate Jurisdiction

An appeal from a criminal judgment typically permits our plenary review because it incorporates both the adjudication of guilt and sentence. See Fed. R. Crim. P. 32(k)(1); see also Berman v. United States, 302 U.S. 211, 212 (1937).  The principal legal issue in this case arises from the fact that the form containing Caltabiano's notice of appeal states in one part that he appeals from his judgment of conviction, but states in another part that his appeal concerns his "[s]entence only."  Despite this latter statement,

Caltabiano's brief on appeal also challenges his conviction. We consider whether Caltabiano's notice of appeal precludes our review of his underlying conviction.

In resolving this issue, we start with Rule 3 of the Federal Rules of Appellate Procedure, which requires that a "notice of appeal . . . designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). The rule is "jurisdictional in nature" and not waivable. Smith v. Barry, 502 U.S. 244, 248 (1992); see New Phone Co. v. City of New York, 498 F.3d 127, 131 (2d Cir. 2007).[1] Nevertheless, in determining whether a notice of appeal complies with the Rule, we apply the Rule's requirements quite liberally on the understanding that "mere technicalities should not stand in the way of consideration of a case on its merits." Torres v. Oakland Scavenger Co., 487 U.S. 312, 316 (1988) (quotation marks omitted). Accordingly, we ask whether the appellant's notice of appeal "conveys the information required by Rule

---

[1] Though this Court has recently held that the time requirements in Federal Rule of Appellate Procedure 4 were not jurisdictional, but merely claim-processing rules, see, e.g., Weitzner v. Cynosure, Inc., 802 F.3d 307, 311 (2d Cir. 2015); United States v. Frias, 521 F.3d 229, 232 (2d Cir. 2008), we need not and do not decide now whether to revisit this Circuit's precedent that Rule 3 is jurisdictional in nature.

3(c)" and provides notice of the litigant's "intent to seek appellate review."

Smith, 502 U.S. at 248–49.

Here, Caltabiano filed his notice of appeal on a hybrid, multi-purpose form, designated "USCA-2 Form A," that appears intended to combine two forms issued by this Court[2]: "Form A," which includes a notice of appeal, and "Form B," a transcript order form. The form used by Caltabiano, however, does not precisely replicate the Form A available on this Court's website and attached as Addendum B, but rather, is a variant form created by Caltabiano's counsel based on Form A and Form B. Appellant's Supp. Br. 2 n.1. For ease of reference, we refer to the form completed by Caltabiano as "USCA-2 Form A" when discussing the uncompleted version of that form, and as "Caltabiano's form" when referring to the form as completed by Caltabiano. Like Form A, USCA-2 Form A requires the appellant to indicate the district court from which the appeal is taken, the case caption, the docket number,

---

[2] Forms issued by this Court are published by the Clerk of Court, available at http://www.ca2.uscourts.gov/clerk/case_filing/forms/forms_home.html, and are distinct from the generic forms appended to the Federal Rules of Appellate Procedure and other forms published by our sister circuits.

and the district judge. Both USCA-2 Form A and Form A then contain the following sentence, to which we refer as the "Rule 3 Section":

> Notice is hereby given that _____ appeals to the
> United States Court of Appeals for the Second Circuit from the
> judgment [_], other [_] _____ entered in this action
> (specify)
> on _____.
> (date)

The information requested in the Rule 3 Section reflects the necessary and sufficient elements of an effective notice of appeal: the "party or parties taking the appeal," the "court to which the appeal is taken," and the "judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1).

The section that appears immediately beneath the Rule 3 Section on both the standard Form A and Caltabiano's form serves a different purpose. On both forms, that section asks the appellant to answer the following questions: first, whether the offense occurred after November 1, 1987, the effective date of the Sentencing Guidelines; and second, whether the appeal "concerns" the defendant's "[c]onviction only," "[s]entence only," or (as phrased on USCA-2 Form A) both "[s]entencing and [c]onviction."[3] On

---

[3] Form A says "Conviction & Sentence." See Addendum B.

11

USCA-2 Form A (but not on this Court's Form A), the defendant may also select a box that says "[n]o" in response to the second question.[4] See Addendum A; Def. App'x 436.

The Rule 3 Section on Caltabiano's form identifies Caltabiano as the appellant, checks the box for "judgment," and provides the date of the judgment of conviction.  If that were all the information the form contained, we would conclude without hesitation that Caltabiano was appealing both his conviction and sentence.  But there is an open question whether Caltabiano's indication elsewhere on his form that the appeal concerned his "[s]entence only" confines our jurisdiction to a review of his sentence, particularly since an appellant is free to narrow the scope of an appeal by specifying particular aspects of the district court's judgment as the subject of an appeal.  See, e.g., Kovaco v. Rockbestos-Surprenant Cable Corp., 834 F.3d 128, 134–35 (2d Cir. 2016).

In a civil case, an appellant can narrow the scope of an appeal by filing a narrative notice of appeal.  But in criminal cases, neither Form A nor USCA-

---

[4] The significance of answering "no" is difficult to discern.  Form A says "Other," a more relevant response to this question than "[n]o."  See Addendum B.

2 Form A (nor, for that matter, the generic Form 1 "Notice of Appeal" appended to the Federal Rules of Appellate Procedure) appears to allow for a full narrative description of the judgment to be appealed. Rather, Form A and USCA-2 Form A pose the two multiple-choice questions noted above: whether the offense conduct postdated the effective date of the Sentencing Guidelines and whether the appeal concerned the appellant's conviction, sentence, both, or neither. These questions are designed principally to aid this Court in classifying cases and managing its criminal docket; we do not view responses to these questions as having any jurisdictional effect, in contrast to the information provided in the Rule 3 Section. In that sense, the questions mirror those on this Court's Form C for counseled civil appeals, which, for example, asks civil appellants whether an appeal raises a matter of first impression. Responses to the questions posed on Form C help allocate judicial resources but do not confine our jurisdiction. A criminal defendant's responses to analogous questions on Form A similarly help allocate judicial resources but do not affect our jurisdiction, even though the responses appear on the same form as a notice of appeal.

13

Several of our sister circuits agree that an appellant's responses to questions of this sort have no jurisdictional effect on appeal. The Third Circuit's "Criminal Appeal Information Statement," which "must be completed and filed at the time the Notice of Appeal is filed," instructs criminal appellants to file a docketing statement indicating whether an appeal concerns the appellant's "[s]entence," "[c]onviction," or "[b]oth."[5] The form makes clear, however, that an appellant's responses are "not intended to preclude presentation of issues on appeal." The Fourth Circuit's form notice of appeal has a similar disclaimer, noting that the statement of issues on appeal is "[n]on-binding."[6] Similarly, the Tenth Circuit's local rules provide that "[a]n issue not raised in the docketing statement may be raised in the appellant's opening brief." 10th Cir. R. 3.4(B). And the D.C. Circuit has held that its "docketing statement is used principally to aid the court in its initial

---

[5] See Third Circuit Criminal Appeal Information Statement, available at http://www2. ca3.uscourts.gov/legacyfiles/noticetocounselconcerningproceduresforappealsfromcriminalc onvictions.pdf.
[6] See Fourth Circuit Docketing Statement – Criminal Cases, available at http://www. ca4.uscourts.gov/docs/pdfs/dockstatementcrim.pdf?sfvrsn=14.

screening of a case; it does not irrevocably define the limits of the scope of an appeal." United States v. Pogue, 19 F.3d 663, 666 (D.C. Cir. 1994).[7]

The docketing questions on USCA-2 Form A are not transformed into jurisdictional questions merely because they appear alongside the appellant's notice of appeal. Like the questions soliciting transcript requests on the same form, the docketing questions are administrative in nature. Accordingly, we hold that on a multi-purpose notice of appeal form like USCA-2 Form A or this Court's Form A, questions other than those corresponding to Rule 3's requirements do not limit the scope of our review. Criminal defendants using Form A or adapted versions produced by counsel or other third parties can limit our appellate jurisdiction by identifying the relevant judgment, order, or part thereof in the space provided in the Rule 3 Section for specifying an appeal from something "other" than the criminal judgment. Because Caltabiano did not do so here, we have jurisdiction to review both his sentence and his conviction on the merits, to which we now turn.

---

[7] The Fifth and Sixth Circuits have held that a notice of appeal designating only a sentence may suffice to confer appellate jurisdiction over the defendant's conviction because the appellant's brief addressed the conviction and the Government suffered no prejudice. See United States v. Mauskar, 557 F.3d 219, 224–25 (5th Cir. 2009); United States v. Paull, 551 F.3d 516, 521 n.1 (6th Cir. 2009).

## II. Sufficiency of the Evidence

Caltabiano challenges the sufficiency of the evidence supporting his conviction for mail fraud. A defendant raising a sufficiency challenge "bears a heavy burden," and "we view the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility." United States v. Pierce, 785 F.3d 832, 837–38 (2d Cir. 2015) (quotation marks omitted). We will overturn the jury's verdict only if "no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Hussain, 835 F.3d 307, 312 (2d Cir. 2016) (quotation marks omitted). As relevant here, to prove a scheme to defraud under the federal mail fraud statute, the Government had to establish that Caltabiano (1) had an intent to defraud, (2) engaged in a scheme to defraud involving material misrepresentations—that is, misrepresentations that would naturally tend to influence, or are capable of influencing, the decision of the decisionmaking body to which they were addressed, and (3) used the mails to further that scheme. See United States v. Weaver, 860 F.3d 90, 94 (2d Cir. 2017).

Caltabiano argues that, because most of the charged mailings were late in the scheme and occurred after he had already made the charged misrepresentations, the Government failed to prove that he still intended to defraud the SSA at the time he sent or received the mailings charged in the indictment. It is true that a jury must find that the defendant's misstatements were "made with the contemporaneous intent to defraud," United States ex rel. O'Donnell v. Countrywide Home Loans, Inc., 822 F.3d 650, 658 (2d Cir. 2016), but the mailings themselves need not contain any misstatements, see Schmuck v. United States, 489 U.S. 705, 714–15 (1989). Instead, the mailing element is satisfied so long as the mailings were "incident to an essential part of the scheme." Schmuck, 489 U.S. at 710–11 (quoting Pereira v. United States, 347 U.S. 1, 8 (1954)). The trial evidence showed that Caltabiano misled Travelers, the WCB, and the SSA by consistently misrepresenting, between April 2008 and October 2010, that he was photophobic, nearly blind, unable to drive, and totally disabled, when in fact he was able to drive, shop, and run errands in broad daylight. There was also evidence that the mailings alleged in the indictment—the September 1, 2009 Function Report and four social

security disability payments Caltabiano received in 2010—were important as part of an <u>ongoing</u> scheme to obtain disability benefits.

Caltabiano also contends that his representations were not proven to be material, as the Government failed to adduce evidence as to the standard under which the SSA made its disability determinations. To the contrary, a disability program manager at the DDD testified that a Function Report enables the DDD to evaluate a claimant's continuing eligibility for disability benefits by determining whether the claimant's condition has improved. The jury was therefore entitled to find that Caltabiano's misrepresentations would tend to influence the agency's decisionmaking process. <u>See</u> <u>United States v.</u> <u>Binday</u>, 804 F.3d 558, 578–79 (2d Cir. 2015).

### III.    <u>Jury Instructions</u>

In addition to his sufficiency challenge, Caltabiano argues that the District Court improperly instructed the jury regarding the materiality element for the mail fraud counts by injecting a reasonable person standard and by failing to instruct the jury that an omission-based theory of mail fraud requires the Government to establish a duty to disclose. The District Court instructed that "[a] material fact . . . is one which would reasonably be

18

expected to be of concern to a reasonable and prudent person in relying upon the [representation] or statement in making a decision with respect to a claim for benefits. This means that if you find a particular statement has been false, you must determine whether that statement was one that a reasonable person might have considered important in making his or her decision." Tr. 1388.

As an initial matter, we conclude that, having proposed nearly identical charging language, see Gov't App'x 2, Caltabiano waived any objection to this instruction. United States v. Giovanelli, 464 F.3d 346, 351 (2d Cir. 2006). As for Caltabiano's argument that the District Court should have instructed the jury on the duty to disclose, we review for plain error because Caltabiano failed to object to the instruction. United States v. Prado, 815 F.3d 93, 100 (2d Cir. 2016). On review, given the circumstances of the trial, we conclude that there was no error, let alone plain error: on appeal, Caltabiano acknowledges that the Government's mail fraud allegations "were based upon affirmative statements," not omissions, and the parties' closing arguments focused entirely on Caltabiano's affirmative misrepresentations. As such, the District Court was not obliged to instruct the jury about a duty to disclose premised

on an omissions theory. See McCardle v. Haddad, 131 F.3d 43, 52 (2d Cir. 1997).

IV. Loss Calculation

Finally, Caltabiano challenges his sentence, arguing that the District Court committed procedural error by misapplying the Guidelines' loss calculations. Because Caltabiano failed to object to the District Court's loss calculations at sentencing, we review for plain error. United States v. Verkhoglyad, 516 F.3d 122, 128 (2d Cir. 2008).

The District Court concluded that, had the fraudulent scheme continued, Caltabiano would have received from the WCB and SSA between $550,000 and $1,500,000 in benefits to which he was not entitled, resulting in a 14-point offense level increase. See U.S.S.G. § 2B1.1(b)(1)(H); id. § 2B1.1 cmt. 3(A). In doing so, the District Court granted Caltabiano a credit of $64,000 against the intended loss, reflecting the amount of workers' compensation to which Caltabiano would have been entitled for the injury to his left eye. Claiming principally that under New York's Workers' Compensation Law[8] his temporary total disability arising from damage to his right eye, had it

---

[8] See N.Y. Workers' Comp. Law § 15(3)(e), (4-a).

20

lasted longer than twenty weeks, would have entitled him to an additional $6,857 on top of the $64,000 credit, Caltabiano contends that the intended loss amount should have fallen between $250,000 and $550,000, resulting in a 12-point rather than 14-point offense level increase. See id. § 2B1.1(b)(1)(G). We are not persuaded. As an initial matter, Caltabiano requested only a $64,000 credit at sentencing, and under the Guidelines loss table, id. § 2B1.1(b)(1), an additional credit of $6,857 would not have been enough to alter the applicable Guidelines range. But even if Caltabiano had requested a more sizeable additional credit, the claim that Caltabiano suffered any temporary total disability associated with his right eye, let alone a disability lasting over twenty weeks, was squarely contradicted by the evidence at trial. See United States v. Carboni, 204 F.3d 39, 46 (2d Cir. 2000).

Lastly, Caltabiano also points to a possible arithmetic error in the District Court's calculation of actual loss suffered by the SSA, but he fails to explain how an error in calculating actual loss would be material to the District Court's estimation of intended loss, on which it relied in imposing the sentence.

21

**CONCLUSION**

We have considered Caltabiano's remaining arguments and conclude that they are without merit.  For the foregoing reasons, the judgment of the District Court is **AFFIRMED**.

# Addendum A

Local Criminal Notice of Appeal Form

**NOTICE OF APPEAL**
**United States District Court**
**Northern District of New York**

UNITED STATES OF AMERICA
-v-
JOHN W. CALTABIANO JR.

Docket No.: 14CR276

Honorable Mae A. D'Agostino
(District Court Judge)

Notice is hereby given that John Caltabiano appeals to the United States Court of Appeals for the Second Circuit from the judgment [ X ], other [_____] _____
(specify)

entered in this action on 04/19/16
(date)

Offense occurred after November 1, 1987    Yes |●|    No |○|

This appeal concerns: Conviction only |○|    Sentence only |●|    Sentencing and Conviction |○|    No |○|

Date 04/25/2016

TO   Steve Clymer

Address   United States Attorney's Office

100 S. Clinton Street

Syracuse, New York 13202

ADD ADDITIONAL PAGE (IF NECESSARY)

George E. Baird
(Counsel for Appellant)

Address   Federal Public Defender's Office

39 N. Pearl Street

Albany, New York 12207

Telephone Number: (518) 436-1850

| TO BE COMPLETED BY ATTORNEY | TRANSCRIPT INFORMATION - FORM B |
|---|---|

▶ QUESTIONNAIRE

▶ TRANSCRIPT ORDER

▶ DESCRIPTION OF PROCEEDINGS FOR WHICH TRANSCRIPT IS REQUIRED (INCLUDE DATE)

|●| I am ordering a transcript
|○| I am not ordering a transcript
Reason
[ □ ] Daily copy is available
[ □ ] U.S. Attorney has placed order
[ □ ] Other. Attach explanation

Prepare transcript of
| □ | Prepare proceedings
| □ | Trial
| ■ | Sentencing        4/15/16
| □ | Post-trial proceedings

Dates

The attorney certifies that he/she will make satisfactory arrangements with the court reporter for payment of the cost of the transcript. (FRAP 10(b)).
Method of payment   |_____| Funds

ATTORNEY'S SIGNATURE   George Baird    DATE   04/25/2016

▶ COURT REPORTER ACKNOWLEDGMENT

To be completed by Court Reporter and forwarded to Court of Appeals.

| Date order received | Estimated completion date | Estimated number of pages |
|---|---|---|
| | Date _____ | Signature _____ (Court Reporter) |

DISTRIBUTE COPIES TO THE FOLLOWING:

1. Original to U.S. District Court (Appeals Clerk).
2. Copy U.S. Attorney's Office.
3. Copy to Defendant's Attorney

4. U.S. Court of Appeals
5. Court Reporter (District Court)

USCA-2
FORM A Rev. 10-02

**A. 436**

23

# Addendum B

## NOTICE OF APPEAL

### United States District Court

_____ District of _____

Caption:

_____ v.

_____

Docket No.: _____

_____
(District Court Judge)

Notice is hereby given that _____ appeals to the United States Court of Appeals for the Second Circuit from the judgment | other |   _____
(specify)

entered in this action on _____.
(date)

This appeal concerns: Conviction only |____   Sentence only |____   Conviction & Sentence |____   Other |____

Defendant found guilty by plea | trial |   N/A |   .

Offense occurred after November 1, 1987? Yes |   No |   N/A |

Date of sentence: _____ N/A ____|

Bail/Jail Disposition: Committed |____   Not committed |   N/A |

Appellant is represented by counsel? Yes | No |   If yes, provide the following information:

Defendant's Counsel: _____

Counsel's Address: _____

_____

Counsel's Phone: _____

Assistant U.S. Attorney: _____

AUSA's Address: _____

_____

AUSA's Phone: _____

_____
Signature