18-1966-cr (L)
*United States v. Bergstein*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of September, two thousand nineteen.

PRESENT:    RICHARD C. WESLEY,
            DENNY CHIN,
            JOSEPH F. BIANCO,
                    *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,
                    *Appellee,*

            v.                                      18-1966-cr (L); 18-2908-cr
                                                    (Con)

DAVID BERGSTEIN,
                    *Defendant-Appellant.*[*]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR APPELLEE:                      EDWARD A. IMPERATORE, Assistant United
                                   States Attorney (Elisha J. Kobre *and* Daniel B.
                                   Tehrani, Assistant United States Attorneys, *on
                                   the brief*), *for* Geoffrey S. Berman, United States

---

[*]    The Clerk of the Court is directed to amend the official caption to conform to the above.

Attorney for the Southern District of New York, New York, New York.

FOR DEFENDANT-APPELLANT:    ALEXANDRA A.E. SHAPIRO (Eric S. Olney *and* Jacob S. Wolf, *on the brief*), Shapiro Arato LLP, New York, New York.

Appeal from the United States District Court for the Southern District of New York (Castel, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

Defendant-appellant David Bergstein appeals from a judgment entered June 28, 2018, convicting him, following a jury trial, of conspiratorial and substantive counts of investment advisory fraud, securities fraud, and wire fraud, in violation of 18 U.S.C. §§ 371, 1343, and 1349 and 15 U.S.C. §§ 78j(b), 78ff, 80b-6, and 80b-17.  Bergstein was sentenced principally to a term of 60 months' imprisonment for the investment advisor fraud counts and 96 months' imprisonment for the securities and wire fraud counts, the sentences on all counts to run concurrently, followed by three years of supervised release.  Bergstein was also ordered to forfeit $22,584,897.00 and pay $15,155,797.27 in restitution.

The evidence at trial established that, from 2011 to 2012, Bergstein participated in a fraudulent scheme to conceal from investors in Weston Capital Asset Management ("Weston") information about impermissible financial transactions; transferred funds from one pool of Weston's investors to benefit another pool of

Weston's investors without disclosing conflicts of interest; and converted a portion of misappropriated Weston funds for his personal benefit. On appeal, Bergstein challenges (1) the admissibility of certain evidence; (2) the district court's decision to quash his subpoenas to third parties; (3) the sufficiency of the evidence as to the securities fraud offenses; (4) the government's use of alternative theories of guilt to prove a violation of the Investment Advisors Act; and (5) the district court's factual conclusions with respect to sentencing. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

## I.    Admissibility of Evidence

Bergstein disputes the district court's admission, pursuant to Federal Rule of Evidence 404(b), of evidence relating to: first, his tax returns; second, his prior transactions with an investor, Jerome Swartz, and an investment firm, Stephens Inc. ("Stephens"); and third, his casino debts. Under Rule 404(b), "[e]vidence of a crime, wrong, or other act" may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). The district court did not abuse its discretion in admitting the evidence for these purposes, and thus Bergstein's evidentiary challenges fail. *See United States v. Litvak*, 889 F.3d 56, 67 (2d Cir. 2018).

**A.    Tax Returns**

The government properly introduced Bergstein's 2011 and 2012 tax returns to show that even though Bergstein maintained that his income was legitimate, shell companies under his control did not report or pay taxes on income from Weston transactions during the years in question.  The evidence demonstrated Bergstein's intent and absence of mistake, was relevant to his claim that his transactions were legitimate, and was not unfairly prejudicial.  *See United States v. Valenti*, 60 F.3d 941, 946 (2d Cir. 1995).

Moreover, the Internal Revenue Service agent did not improperly testify as an expert witness when he authenticated the tax documents in evidence, communicated the contents of Bergstein's 2011 and 2012 tax returns to the jury, identified which required records the agency lacked , and explained certain basic concepts.  *See United States v. Cuti*, 720 F.3d 453, 458 (2d Cir. 2013) (holding that accountants' testimony was proper fact-opinion and not expert testimony in part because witnesses' reasoning "was based on undisputed accounting rules").

**B.    Swartz and Stephens Investment Transactions**

While Bergstein argues that the government introduced evidence of his prior investment transactions with Swartz and Stephens only to degrade his character, the evidence was admissible under Rule 404(b).  The government introduced evidence to show that between 2007 and 2008, Bergstein made false representations to Swartz

and Stephens to solicit their investments as he funneled the money through attorney trust accounts and shell companies to cover personal debts. This evidence was relevant to show, *inter alia*, that because of his prior losses, Swartz would not have backed Swartz IP, a shell company Bergstein created to secure a $17 million loan from Weston's Wimbledon Class TT Portfolio ("TT"); Bergstein misappropriated portions of the TT funds; and Bergstein's motive was to use the misappropriated funds from Weston to repay Swartz and Stephens. Moreover, Bergstein's ability to replicate his prior scheme to borrow money from Swartz and Stephens for the purpose of diverting Weston's money was evidence of opportunity, plan, absence of mistake, or lack of accident in his commission of the frauds in question. *See* Fed. R. Evid. 401(b)(2).

## C. Casino Debts

The evidence of Bergstein's casino debts plainly reflects his motive to misuse Weston's money in efforts to repay Swartz and Stephens after misusing their investments to satisfy those debts. The evidence also demonstrated that Bergstein controlled the attorney trust accounts and shell companies that he used to facilitate the frauds because he used those same means to pay his casino debts and transfer money to himself. *See United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) ("[E]vidence of uncharged criminal activity is not considered other crimes evidence . . . if it is inextricably intertwined with the evidence regarding the charged offense, or if it is

necessary to complete the story of the crime on trial." (citation and internal quotation marks omitted)).

## II.     Third-Party Subpoenas

Bergstein argues that the district court erroneously applied *United States v. Nixon*, 418 U.S. 683, 700 (1974), in quashing his subpoenas to third parties, including subpoenas issued to those who cooperated against him -- Albert Hallac, Weston's founder, and Keith Wellner, one of Weston's chief officers.  Under the *Nixon* standard, a party seeking the issuance of subpoenas must show (1) relevancy, (2) admissibility, and (3) specificity.  *Nixon*, 418 U.S. at 700.

Bergstein maintains that we should apply the more lenient standard set forth in *United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008), which requires a defendant to demonstrate only "an articulable suspicion" that the request for documents "is (1) reasonable, construed as material to the defense, and (2) not unduly oppressive for the producing party to respond." *Id.* (internal quotation marks omitted).  We have, however, applied the *Nixon* standard to Rule 17(c) subpoenas requested by a defendant, *United States v. Ulbricht*, 858 F.3d 71, 109 (2d Cir. 2017) (seeking documents from the government), as have district courts in this Circuit, *see United States v. Skelos*, No. 15-CR-317 (KMW), 2018 WL 2254538, at *1 (S.D.N.Y. May 17, 2018) ("[C]ourts in the Second Circuit have almost unanimously applied *Nixon* to subpoenas served on third-parties.").

Whether under the *Nixon* standard or the standard articulated in *Tucker*, we conclude that the district court did not abuse its discretion in quashing the subpoenas. The district court may quash a Rule 17(c) subpoena "if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). Assuming the documents were relevant and admissible, Bergstein's request for "[a]ll e-mails or other communications [Hallac and Wellner] authored . . . or received" relating to almost thirty paragraphs from Bergstein's indictment was overly broad. App'x at 185, 222. Further, Bergstein's subpoenas plainly constituted a fishing expedition for "documents the government did not obtain" and that he admittedly "cannot identify." Def. Appellant's Br. at 45; *see Ulbricht*, 858 F.3d at 109. Accordingly, the district court did not abuse its discretion in quashing the subpoenas to third parties.

## III.     Sufficiency of Evidence

Bergstein argues that the government failed to present sufficient evidence that notes from Weston's Partners 2 Fund ("P2") and TT loans were securities within the meaning of the Securities Exchange Act, 15 U.S.C. § 78c(10). Construing the evidence in the light most favorable to the government, we are not persuaded. *See United States v. Baker*, 899 F.3d 123, 129 (2d Cir. 2018).

An "investment contract" is a "security," 15 U.S.C. § 78c(10), concerning (1) "an investment of money," (2) "in a common enterprise," (3) "with profits to be derived solely from the efforts of others." *Revak v. SEC Realty Corp*., 18 F.3d 81, 87 (2d

Cir. 1994). First, the government established that Bergstein invested funds from P2 and TT in his shell companies, Arius Libra and Swartz IP, respectively. Second, "[P2 and TT's] fortunes [were tied] to the fortunes of the other investors [of Arius Libra and Swartz IP] by the pooling of assets" and "fortunes of [P2 and TT investors] were interwoven with [Bergstein's] fortunes." *Id*. at 87-88 (requiring horizontal and strict vertical commonality to find that there was a common enterprise). As to the third factor, there was evidence that Bergstein had control of Arius Libra and Swartz IP. Because there was sufficient evidence to show that the P2 and TT instruments were investment contracts, we need not decide whether there was sufficient evidence to show that they were also notes or whether the district court's jury instruction on the meaning of "security" was plain error. *See S.E.C. v. Thompson*, 732 F.3d 1151, 1170 (10th Cir. 2013); *cf. United States v. Leonard*, 529 F.3d 83, 87 (2d Cir. 2008). Accordingly, the jury's verdict was supported by the evidence.

## IV. Investment Advisers Act Theories of Guilt

Under 15 U.S.C. § 80b-6, it is unlawful for any investment adviser to: "employ any device, scheme, or artifice to defraud any client or prospective client," § 80b-6(1); "engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client," § 80b-6(2); or "engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative," § 80b-6(4). Bergstein contends that the government could not rely on the first two

subsections, which require fraud on a "client or prospective client," because Weston advised only the individual investors and not the hedge funds. Consequently, Bergstein argues that he is entitled to a new trial on the investment adviser fraud offenses because at trial, two of the three theories of guilt the government presented were legally invalid. *See Skilling v. United States*, 561 U.S. 358, 414 (2010). We are not persuaded because the factual record indicates that Hallac advised the funds, as well as the funds' investors, and thus the funds were his clients as well. Hence, the jury could convict Bergstein on any of the three theories charged. *See United States v. Salmonese*, 352 F.3d 608, 624 (2d Cir. 2003).

## V.    Sentencing

Bergstein contests the district court's calculation of the loss amount, application of the bankruptcy fraud enhancement, and calculation of forfeiture and restitution. The district court's factual findings with respect to Bergstein's sentence, however, were not clearly erroneous. *See United States v. Afriyie*, 929 F.3d 63, 70 (2d Cir. 2019).

First, we are not persuaded, as Bergstein argues, that the district court should have reduced the $22.6 million loss amount on the ground that Weston recovered portions of the collateral. While the loss amount must be reduced if the defendant returns collateral that he provided, U.S.S.G. § 2B1.1 cmt. 3(E)(ii), here, Bergstein did not provide any bona fide collateral of his own -- any amount Weston

- 9 -

recovered on the P2 loan was money that it had originally provided. Moreover, to the extent Weston recovered any of the collateral, the intended loss, which includes the value of the P2 loan, exceeds the actual loss amount and is therefore the appropriate measure of loss. *See United States v. Lacey*, 699 F.3d 710, 720 (2d Cir. 2012) ("[A]lthough Application Note 3(E)(ii) accurately describes the calculation of *actual* loss, the note cannot be mechanically followed where *intended* loss is higher, since the larger intended amount is a better measure for the defendant's culpability." (citation and internal quotation marks omitted)); *Carboni*, 204 F.3d at 47 ("[W]here the intended loss is greater than the actual loss, the intended loss is to be used." (citation and internal quotation marks omitted)). In any event, the Guidelines provide that if the loss amount exceeds $9.5 million, then the defendant's offense level increases by 20 levels. U.S.S.G. § 2B1.1(b)(1)(K). The loss amount on the $17.7 million TT loan, less Swartz IP's repayment of $1 million before the fraud was detected, still exceeds $9.5 million. *See United States v. Caltabiano*, 871 F.3d 210, 219-20 (2d Cir. 2017) (requested credit insufficient to alter Guidelines range based on loss amount).

Second, the bankruptcy fraud enhancement was clearly applicable to Bergstein's offense. U.S.S.G. § 2B1.1(b)(9)(B) (providing that offense level increases by 2 if offense involves misrepresentation or fraud during a bankruptcy proceeding). In 2007 and 2008, Bergstein misappropriated funds from Stephens and later used $1

million of misappropriated TT funds -- supplied by one of his shell companies -- to purchase Stephens' claim in the bankruptcy.

Finally, the district court did not err in calculating the forfeiture and restitution amount. For the purposes of forfeiture under 18 U.S.C. § 981(a)(1)(C), "acquired" property "need not be personally or directly in the possession of the defendant" as long as "at some point, [it had] been under the defendant's control." *United States v. Contorinis*, 692 F.3d 136, 147 (2d Cir. 2012) (internal quotation marks omitted). Bergstein effectively controlled the proceeds of the P2 and TT funds as he was able to transfer the funds to shell companies and use the funds for personal expenses. To the extent that Bergstein objects to the forfeiture of $22,584,897 and restitution of $15,155,797.27 on the ground that neither amount accounts for the recovery of collateral, his argument fails for the reasons stated above. Bergstein's reliance on *Honeycutt v. United States*, 137 S. Ct. 1626 (2017), is misplaced as the Supreme Court held that forfeiture, under 21 U.S.C. § 853(a)(1), could not be imposed upon a defendant, jointly and severally with his coconspirator, for proceeds he never acquired or controlled. Here, the evidence established that Bergstein controlled the funds in question.

\* \* \*

We have considered Bergstein's remaining arguments and conclude they are without merit. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

- 11 -