19-3833-cr(Con)
*United States v. Christopher Howard*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————————

August Term 2020

(Argued: March 8, 2021 | Decided: August 3, 2021)

Docket Nos. 19-3833-cr(Con), 20-2051-cr(XAP)

UNITED STATES OF AMERICA,

*Appellant-Cross-Appellee,*

-v.-

MICHAEL WHITE, JOEY COLON, DEMETRIUS WINGO, AKA Poppa, ANTHONY BUSH,
AKA Ant, DAVID OQUENDO, CHRISTIAN PEREZ, AKA Pun, JAMES
ROBINSON, ALLEN KNIGHT, AKA Stutter, MIGUEL CALDERON, AKA
Mick, JAMES SNIPES, AKA 80 Mese, WESLEY MONGE, AKA Wes,
OSCAR BRIONES, AKA O Block, ROY ROBINSON, AKA Mob,

*Defendants,*

CHRISTOPHER HOWARD, AKA JuJu,

*Defendant-Appellee-Cross-Appellant.*

———————————

Before:
    SACK AND MENASHI, *Circuit Judges*, and KAPLAN, *District Judge*.[*]

Defendant-appellee-cross-appellant Christopher Howard, a member of a gang known
as MBG, was convicted after a jury trial of a racketeering conspiracy in violation of 18 U.S.C. §
1962(d), committing a violent crime in aid of racketeering ("VICAR") – namely, a shooting of rival
gang members – in violation of 18 U.S.C. § 1959(a), and using a firearm in furtherance of the
racketeering conspiracy and the VICAR offense in violation of 18 U.S.C. § 924(c). Subsequently,

_____

[*]    Judge Lewis A. Kaplan, United States District Judge for the Southern District of
New York, sitting by designation.

the district court granted Howard's motion for judgment of acquittal on the VICAR and firearm counts on sufficiency of the evidence grounds and denied it as to the racketeering conspiracy count.

The government and the defendant each appeal from the order granting in part and denying in part defendant's motion, respectively. We treat defendant's notice of appeal as an appeal from the judgment of conviction on the racketeering conspiracy count. We hold that the evidence was sufficient to support the jury's verdict in its entirety and that the district court erred to the extent that it granted defendant's motion. Accordingly, we affirm so much of the district court's order as denied defendant's motion as to the racketeering conspiracy count, reverse so much of it as granted that motion, and vacate the judgment below with instructions to the district court to reinstate the jury verdict finding Howard guilty on the VICAR and firearm counts and to resentence Howard accordingly.

———————

ALEXANDRA ROTHMAN, Assistant United States Attorney (Christopher Clore, Jordan Estes, Thomas McKay, Assistant United States Attorneys, *on the brief*), for AUDREY STRAUSS, United States Attorney for the Southern District of New York, *for Appellant-Cross-Appellee*.

JOHN A. DIAZ, Diaz & Moskowitz PLLC, New York, New York, *for Defendant-Appellee-Cross-Appellant*.

———————

KAPLAN, *District Judge*:

This case arises from a violent rivalry between two neighborhood gangs that operated in and around the Mill Brook Houses, a housing project in the Bronx. Gang violence divided the Mill Brook Houses into two warring territories: the "up-the-block" section, which was controlled by a gang called MBG ("Mill Brook Gangstas" or "Money Bitches Guns"), and the "down-the-block" section, which was controlled by a gang called Killbrook. Members of the rival gangs fought, shot, and robbed one another for years.

On the night of August 17, 2014, defendant Christopher Howard, a member of MBG, ventured down-the-block with another MBG member and shot three men. One of the victims, Shadean Samuel, was a Killbrook member who had broken Howard's jaw in a fight between MBG

and Killbrook in 2011. After a one-and-a-half week trial in the United States District Court for the Southern District of New York, a jury convicted Howard of a racketeering conspiracy in violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(d), a violent crime in aid of racketeering ("VICAR") in violation of 18 U.S.C. § 1959(a), and using a firearm in furtherance of the racketeering conspiracy and the VICAR offense in violation of 18 U.S.C. § 924(c).

The district court subsequently granted in part Howard's motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, vacating the VICAR and firearm counts. In the district court's view, the evidence was insufficient to support the determination that Howard committed the August 2014 shooting in furtherance of the racketeering conspiracy or to advance his position within MBG, rather than because of an alleged personal vendetta against Samuel. The district court denied the motion insofar as it sought to overturn the conviction on the racketeering conspiracy count. The government and Howard cross-appeal from the district court's order.

For the following reasons, we agree with the court below that the evidence was sufficient to sustain Howard's conviction on the racketeering conspiracy count but hold that the district court erred in vacating his convictions on the VICAR and firearm counts.

**FACTS**

*Howard's Trial*

In July 2018, a superseding indictment charged Howard and nine co-defendants with racketeering and other crimes in connection with MBG and the YGz, a larger gang also operating in and around the Mill Brook Houses ("Mill Brook") that shared overlapping membership with MBG. Howard was charged in Count One with the racketeering conspiracy relating to MBG, in

Count Six with committing a violent crime in aid of racketeering (namely, the August 2014 shooting), and in Count Twelve with using a firearm in furtherance of the racketeering conspiracy and the VICAR offense.

The case originally was assigned to Judge Sweet, who passed away shortly after presiding over Howard's jury trial. It was reassigned to another judge, who decided the post-trial motion at issue. The evidence, viewed in the light most favorable to the government, established the following.

*A.     MBG*

MBG is a "neighborhood gang" that was started in Mill Brook around 2003.[1] Mill Brook consisted of ten numbered apartment buildings that sloped up a hill. Residents referred to buildings eight, nine, and ten – located up the hill – as the up-the-block section, which was MBG's territory. They referred to buildings one through six as the down-the-block section, which was Killbrook's territory.[2]

The rivalry between MBG and Killbrook began in 2007, when one of MBG's leaders, Joey Colon, shot a man from down-the-block. After that shooting, MBG and Killbrook clashed violently for some time, although there were intermittent periods when the violence subsided. Witnesses testified that there were robberies, fights, stabbings, and shootings between MBG and Killbrook members with varying frequency from about 2007 to 2016. Colon testified that he tried

---

[1] All appendix and special appendix references are to the appendices filed in No. 19-3313-cr(L).

[2] Building seven was "a neutral building" colloquially referred to as "midtown." A466.

to "squash" the rivalry around October 2010 because it had led to an increased police presence in the area, which made it harder for him to sell drugs.[3] But the rivalry roared back to life in spring 2011, when several fights and shootings occurred. When tensions were high, any Killbrook member was a "fair target" for MBG members to shoot.[4]

Howard was one of MBG's original members. Though not high-ranking, he routinely posted on Facebook about his MBG membership. His Facebook account included posts about MBG, photographs of Howard with other MBG members, and conversations between Howard and other MBG members in which they discussed shootings and tension with people from down-the-block.[5] MBG had its own handshake (known as "peacing") that its members, including Howard, used to greet each other.[6]

MBG members customarily committed acts of violence together. It was their practice to inform one another of their exploits so that no member would be caught off guard by an act of retaliation. According to cooperating witnesses, MBG members earned respect and rose in rank by committing shootings against rivals. Colon testified that he became one of MBG's leaders by committing several shootings. Howard openly discussed both his desire to retaliate against members of Killbrook and his need to "put in work" – *i.e.*, "[p]romote violence [and] shootings" – for MBG.[7]

---

[3] A474.

[4] A499.

[5] A620, A639.

[6] A470.

[7] A481-82, A514, A623, A629.

Some MBG members sold drugs, typically crack cocaine and marijuana, around Mill Brook.  MBG had a "stash house" in up-the-block Mill Brook where Howard often spent time.[8] MBG members stored drugs, packaged and cooked crack cocaine, and maintained shared firearms at the stash house.  Any gun kept at the stash house was considered an "MBG gun" that all MBG members could use.[9]

Most MBG members  were members also of the YGz, the "Young Gunnaz."[10]  The YGz was a "larger" gang that, unlike MBG, operated throughout New York.[11]  MBG members sometimes used the YGz phrase "what's gunning" to greet each other.[12]  At trial, Judge Sweet – at Howard's request – limited the evidence about the YGz to basic evidence of its functions and organizational structure.  He gave a limiting instruction stating that Howard's charges did not relate "in any way" to the YGz and that the jury was "to draw no inference from any of the testimony about [the] YGz against . . . Howard.[13]

---

[8] A526.

[9] *Id.*

[10] A465.  Count Two of the superseding indictment charged certain of Howard's co-defendants with a racketeering conspiracy in connection with the Ygz.  Howard was not charged with being a member of the YGz. A417.

[11] A511.

[12] A470.

[13] A502.

*B.* *The August 2014 Shooting*

On the night of August 17, 2014, Howard ventured down-the-block with fellow MBG member Jonathan Jose and shot three men: two Killbrook members, including Samuel, and one other man from down-the-block. There was evidence that Howard committed this shooting at least in part in retaliation for a fight between MBG and Killbrook in 2011 in which Samuel broke Howard's jaw. The government introduced a number of Howard's Facebook messages in which he informed other MBG members that he wanted to retaliate against Killbrook generally and Samuel in particular for the 2011 fight.

On the night of the shooting, Jose went down-the-block and saw Samuel.[14] Once Jose located Samuel, Jose called Howard, who joined him down-the-block. Around 3:00 A.M., Howard and Jose approached Samuel, who was sitting with a few other people in a courtyard near a flagpole.[15] Howard fired three or four shots, wounding Samuel and the two other men.[16] An eyewitness, Raynaldo Melendez, identified Howard as the shooter.[17]

By the time of the shooting, the rivalry between MBG and Killbrook apparently had become more subdued, although it had not subsided completely. Melendez testified that, as of August 2014, the relationship between MBG and Killbrook was both "hostile" and "cordial," and

---

[14] A519.

[15] A455.

[16] A425, A432-33.

[17] A456-57.

there had been no shootings for about a year.[18] Nevertheless, "there was still some tension between the two sides."[19] Melendez recalled noticing Jose near a down-the-block store hours before the shooting, which he thought was unusual because MBG members typically did not venture into Killbrook's territory.[20]

After the shooting, Howard ran into Melendez at a memorial service. Howard told Melendez that he had meant to shoot only Samuel, not the other two men.[21] Around 2015, Howard ran into Killbrook member Jose Rodriguez on the Staten Island Ferry. Howard aggressively approached Rodriguez, who had robbed Howard in 2009 "to get status" with Killbrook.[22] But Howard ultimately agreed to refrain from fighting Rodriguez so as to not "start something up again" between MBG and Killbrook.[23] Howard told Rodriguez that his "main focus" down-the-block was Samuel.[24] Rodriguez testified that he believed that Samuel had broken Howard's jaw in 2011 because Samuel "was trying to get in good with [Killbrook]."[25]

---

[18] A454-55.

[19] *Id.*

[20] *Id.*

[21] A456-57.

[22] A542-43.

[23] *Id.*

[24] A543.

[25] A544.

In relevant part, the trial court charged the jury as follows:

> The fifth element that the government has to prove with respect to Count Two[26] is that the defendant acted for the purpose of gaining entrance to, maintaining a position in, or increasing a position in that enterprise [MBG]. To establish that the defendant committed the crime alleged for the purpose of gaining entrance or maintaining or increasing his position in the enterprise, the government must prove that the defendant's general purpose in committing the crime in question was to gain entrance to, to increase his position in, or to maintain his position in the enterprise.
>
> *The government does not need to prove that maintaining or increasing his position in the enterprise was the defendant's sole or principal motive, so long as it was a substantial motivating factor in the defendant's decision to participate in the attempted murder and/or the assault with a deadly weapon.*[27]

The jury convicted Howard on all counts.

Following the verdict, Howard moved, pursuant to Fed. R. Crim. P. 29, for judgment of acquittal on all counts. By order dated November 4, 2019, the district court granted so much of the motion as sought a judgment of acquittal on the VICAR and firearm counts but denied it as to the racketeering conspiracy count. The government promptly appealed from that order.[28]

On June 11, 2020, Howard was sentenced on the undisturbed count of conviction, principally to two years' imprisonment. Judgment was entered the same day and, on June 24, 2020,

---

[26] It appears that the counts in the superseding indictment were renumbered at Howard's trial, causing the VICAR count to become Count Two. This is common where, as here, the defendant being tried was not charged with all of the counts in the indictment.

[27] A580 (emphasis added).

[28] A738. The government's appeal is No. 19-3313-cr(L).

Howard filed a notice of appeal.[29]

---

[29] Before proceeding, we address a jurisdictional issue raised by Howard's notice of appeal, which stated that he was appealing from the "order denying a judgment of acquittal entered in this action on November 4, 2019." Notice of Appeal, *United States v. Howard*, No. 17-cr-611 (S.D.N.Y. June 24, 2020), ECF No. 673 (hereinafter "ECF No. 673"). Howard did not check the box on the form notice indicating that he was also appealing from the district court's judgment of conviction. *See id.* He filed no notice of appeal from that judgment.

An order denying a motion for judgment of acquittal under Rule 29 is not a final decision over which we have appellate jurisdiction. *United States v. Ferguson*, 246 F.3d 129, 138 (2d Cir. 2001) (citing 28 U.S.C. § 1291 and *United States v. Aliotta*, 199 F.3d 78, 81 (2d Cir. 1999)). Moreover, Fed. R. App. P. 3(c)(1)(B) requires that a notice of appeal "designate the judgment, order, or part thereof being appealed." Hence, it is arguable that Howard has not appealed from the judgment of conviction and that his appeal from the order should be dismissed for want of jurisdiction.

However, "'not every technical defect in a notice of appeal constitutes a jurisdictional defect,'" *Elliott v. City of Hartford*, 823 F.3d 170, 172 (2d Cir. 2016) (quoting *Grune v. Coughlin*, 913 F.2d 41, 43 (2d Cir. 1990)), and we have held that Rule 3(c)(1)(B) should be applied "quite liberally on the understanding that 'mere technicalities should not stand in the way of consideration of a case on its merits.'" *United States v. Caltabiano*, 871 F.3d 210, 215 (2d Cir. 2017) (quoting *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 315 (1988)). We accordingly will "'tak[e] the parties' intentions into accoun't'" when construing a notice of appeal and will find jurisdiction when "'the intent to appeal from a decision is clear on the face of, or can be inferred from, the notice of appeal.'" *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 134 (2d Cir. 2016) (quoting *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 65-66 (2d Cir. 2008)) (alteration omitted).

Under these principles, we conclude that Howard intended to appeal from the district court's judgment of conviction and that we have jurisdiction over his appeal. There is no practical difference between appealing from a district court's judgment of conviction and a district court's denial of a motion for a judgment of acquittal on that judgment of conviction. Moreover, Howard indicated on the notice of appeal that his appeal concerned his "Conviction." *See* ECF No. 673. Construing the notice of appeal liberally – as we must – it is clear that Howard's intent to appeal from the district court's judgment of conviction can "be inferred from . . . the notice of appeal," *Kovaco*, 834 F.3d at 134 (quotation marks omitted), and that his failure to do so expressly is a "mere technicalit[y]" that "should not stand in the way of" our adjudication of this case. *Caltabiano*, 871 F.3d at 215 (quotation marks omitted).

# DISCUSSION

## I

"If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal" pursuant to Federal Rule of Criminal Procedure 29(c), but it may do so only when "there is 'no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt.'"[30]

We review a challenge to the sufficiency of the evidence *de novo*, though a defendant "carries a heavy burden" in making such a challenge.[31]  A conviction must be upheld "if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"[32]  In conducting our review, we consider the totality of the evidence "'in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence.'"[33]  We turn first to Howard's challenge to the conviction on the racketeering conspiracy charge (Count One).

---

[30] *United States v. Irving,* 452 F.3d 110, 117 (2d Cir. 2006) (quoting *United States v. Taylor*, 464 F.2d 240, 243 (2d Cir.1972)).

[31] *Id.*

[32] *United States v. Vernac*e, 811 F.3d 609, 615 (2d Cir. 2016) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

[33] *United States v. Aquart*, 912 F.3d 1, 17 (2d Cir. 2018) (quoting *United States v. Sheehan*, 838 F.3d 109, 119 (2d Cir. 2016)).

*A.    Howard's Appeal – Racketeering Conspiracy*

Howard contends that the evidence was insufficient to permit a conclusion that MBG was a RICO enterprise in which he knowingly participated.  We disagree.

We note at the outset that Howard's argument is inherently flawed.  The essence of a RICO conspiracy is "the existence of *an agreement* to violate RICO's substantive provisions."[34] Though the substantive RICO offenses require proof of an enterprise and a pattern of racketeering activity, "the establishment of an enterprise is not an element of the RICO conspiracy offense."[35] The government "need only prove that the defendant knew of, and agreed to, the general criminal objective of a jointly undertaken scheme."[36] We have analyzed whether the government has satisfied this burden by looking to whether the evidence permitted a conclusion that the defendant knowingly "agreed with other[s] . . . to function as a unit for the common purpose" of engaging in racketeering activity.[37] "To be convicted as a conspirator [under RICO], one must be shown to have possessed

---

[34]

*See United States v. Benevento*, 836 F.2d 60, 73 (2d Cir.1987) (emphasis added), *abrogated on other grounds by United States v. Indelicato*, 865 F.2d 1370 (2d Cir.1989); *see also United States v. Arrington*, 941 F.3d 24, 36-37 (2d Cir. 2019); *United States v. Applins*, 637 F.3d 59, 72-76 (2d Cir. 2011).  Notably, the RICO conspiracy provision is broader than the general conspiracy provision applicable to federal crimes, 18 U.S.C. § 371.  "There is no requirement of some overt act or specific act in the [RICO conspiracy provision], unlike the general conspiracy provision . . . , which requires that at least one of the conspirators have committed an 'act to effect the object of the conspiracy.'" *Salinas v. United States*, 522 U.S. 52, 61 (1997) (quoting 18 U.S.C. § 371).

[35]

*Applins*, 637 F.3d at 75; *see also City of New York v. Bello*, 579 F. App'x 15, 17 (2d Cir. 2014) (summary order).

[36]

*Arrington*, 941 F.3d at 36-37.

[37]

*Id.* at 37.

knowledge of only the general contours of the conspiracy."[38]

Of course, proof of the actual existence of a RICO enterprise – though not necessary to convict on a conspiracy charge – can be highly relevant to establishing an alleged RICO conspiracy.[39] A RICO enterprise "includes any . . . group of individuals associated in fact although not a legal entity."[40] An association-in-fact enterprise, which the government argues the evidence sufficiently established at Howard's trial, "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."[41] The enterprise "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."[42] If the government proves the existence of a RICO enterprise, "we need inquire only whether an alleged conspirator knew what the other conspirators 'were up to' or whether the situation would logically lead an alleged conspirator 'to suspect he was part of [the] larger

---

[38] *United States v. Zichettello*, 208 F.3d 72, 100 (2d Cir. 2000).

[39] *See United States v. Pizzonia*, 577 F.3d 455, 463 (2d Cir. 2009) ("Just as the evidence used to establish the enterprise and pattern elements 'may in particular cases coalesce,' so too may the evidence used to prove those elements and a conspiratorial agreement to engage in racketeering." (citations omitted) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).

[40] 18 U.S.C. § 1961(4).

[41] *United States v. Turkette*, 452 U.S. 576, 583 (1981).

[42] *Boyle v. United States*, 556 U.S. 938, 946 (2009).

enterprise.'"[43]

The evidence at Howard's trial was more than sufficient under either of these standards. First, there was adequate proof that Howard knew of, and agreed to, MBG's general criminal objective of committing acts of violence against Killbrook. For years, MBG collectively engaged in violence, including fights and shootings, against its rivals from down-the-block. Howard routinely told other MBG members about his desire to harm Killbrook members and his need to "put in work" – *i.e.*, "[p]romote violence [and] shootings" – for MBG.[44] He committed such an act of violence when he – accompanied by another MBG member – shot three men from down-the-block, two of whom were Killbrook members. From this evidence, a juror reasonably could have inferred that Howard agreed with other MBG members to function as a unit for the common purpose of committing acts of violence.

Second, the evidence permitted the jury to find that MBG was a RICO enterprise in which Howard knowingly participated. The government adduced evidence that MBG members committed acts of violence in groups and that performing such acts of violence could increase an MBG member's status in the gang. Moreover, MBG members functioned as a unit for the common purpose of selling drugs. MBG maintained a stash house where its members kept guns, sold drugs, and discussed their exploits. Howard spent time with other MBG members at the stash house, from which a juror reasonably could have inferred that Howard was part of an enterprise that sold drugs. Finally, MBG had a gang handshake and phrase that its members, including Howard, used to greet

---

[43] *Zichettello*, 208 F.3d at 99 (quoting *United States v. Viola*, 35 F.3d 37, 44-45 (2d Cir. 1994)).

[44] *See* A481-82, A514.

each other. This was further evidence of MBG's existence as an association-in-fact enterprise.

Howard argues also that there was insufficient evidence to establish that MBG was a RICO enterprise "separate and apart from the YGz enterprise."[45] This argument finds no support in the record, which – at Howard's request – was limited with respect to the YGz. Indeed, Judge Sweet instructed the jury that Howard's charges did not relate "in any way" to the YGz. In these circumstances, and in light of the evidence described above, it would defy reason to conclude that the government proved a racketeering conspiracy only in connection with the YGz.

In any event, the evidence was sufficient to establish that, though many MBG members were members also of the YGz, MBG members functioned separately as a unit for the purpose of engaging in violence against Killbrook and selling drugs. MBG had its own leaders, members, and practices, which included committing acts of violence in groups and disseminating information about the gang's activities to protect members from retaliation.[46] Contrary to Howard's contention, evidence that an alleged enterprise had a "hierarchy, induction requirements or rituals, decisionmaking procedure[s], or that . . . members were expected to serve any kind of roles"[47] – which he argues that MBG lacked – is not required to sustain a RICO conviction.[48] Nor is it a

---

[45] Brief for Defendant-Appellee-Cross-Appellant Christopher Howard ("Howard Br.") at 18, *United States v. Howard*, No. 19-3313-cr(L) (2d Cir. Sept. 24, 2020); *see also id.* at 21, 23, 25-26.

[46] *See* A470, A485-87.

[47] *Id.* at 19.

[48] *See, e.g.*, *Boyle*, 556 U.S. at 948.

requirement that RICO enterprises have "unique" greetings.[49]

Finally, Howard argues that MBG was not a separate RICO enterprise because many of the acts of violence the government attributed to the MBG/Killbrook rivalry actually were committed personally by Colon or in connection with the YGz. This argument is meritless. The government presented extensive evidence about the violent MBG/Killbrook rivalry, which extended from at least 2007 to 2016. To the extent that there was some evidence that MBG members made an effort to "squash" the rivalry or that certain shootings were personal in nature, that would not require us to vacate Howard's conviction in light of the ample evidence the government presented about the nature of the conflict. We defer to the jury's rational determinations "of the weight of the evidence," "the credibility of the witnesses," and "choice of the competing inferences that can be drawn from the evidence."[50]

Accordingly, we hold that the district court did not err in denying Howard's motion for judgment of acquittal on Count One.

B.     *The Government's Appeal*

The government appeals from so much of the district court's November 4, 2019 order as granted Howard's Rule 29 motion for judgment of acquittal on Count Six and Count Twelve.[51]

---

[49] *See* Howard Br. at 20 (taking issue with the fact that "none of the witnesses described how the MBG 'peacing' and 'greeting' was separate or distinct from the YGz['s]" greeting); *Boyle*, 556 U.S. at 948.

[50] *United States v. Morrison*, 153 F.3d 34, 49 (2d Cir. 1998).

[51] There are references in the record and the briefs to Counts One, Two, and Three. From the context, it is clear that these are Counts One, Six and Twelve of the superseding indictment. They apparently were referred to as Counts One, Two and Three, respectively, in a redacted

For the reasons that follow, we hold that the district court erred in both respects.

### 1. Count Six – VICAR

The district court vacated Howard's conviction on Count Six, which charged him with a violent crime in aid of racketeering under 18 U.S.C. § 1959(a) in connection with the August 2014 shooting. To convict the defendant of a violent crime in aid of racketeering, the government was obliged to prove five elements: "(1) that the Organization was a RICO enterprise, (2) that the enterprise was engaged in racketeering activity as defined in RICO, (3) that the defendant in question had a position in the enterprise, (4) that the defendant committed the alleged crime of violence, and (5) that his general purpose in so doing was to maintain or increase his position in the enterprise."[52] In vacating Howard's conviction on this count, the district court relied solely on the fifth element. In its view, the evidence was not sufficient to establish that Howard committed the shooting with the requisite motive – *i.e.*, to maintain or increase his membership in MBG – rather than to further his alleged personal vendetta against Samuel.

We consistently have construed "the 'maintaining or increasing position' language in § 1959 . . . 'liberally.'"[53] This element is "satisfied if the jury could properly infer that the defendant committed his violent crime because he knew it was expected of him by reason of his

---

version of the superseding indictment that excluded references to co-defendants who were not tried together with Howard, a practice common in the Southern District of New York and doubtless elsewhere.

[52] *United States v. Concepcion*, 983 F.2d 369, 381 (2d Cir. 1992).

[53] *United States v. Bruno*, 383 F.3d 65, 83 (2d Cir. 2004), *as amended* (Oct. 6, 2016) (quoting *United States v. Rahman*, 189 F.3d 88, 127 (2d Cir.1999)).

membership in the enterprise or that he committed it in furtherance of that membership."[54] The government need not prove that maintaining or increasing the defendant's position in the RICO enterprise was his "sole or principal motive."[55] Indeed, as we held in *United States v. Santiago-Ortiz,*[56] a defendant's personal motive for committing an act of violence does not preclude his conviction under § 1959 as long as he likewise was motivated by a desire to increase or maintain his position in the RICO enterprise.[57]

The trial court's jury instructions were consistent with this principle. As noted, the court charged the jury in relevant part that "[t]he government does not need to prove that maintaining or increasing his position in the enterprise was the defendant's sole or principal motive, so long as it was a substantial motivating factor in the defendant's decision to participate in the attempted murder and/or the assault with a deadly weapon."[58] Howard does not claim here that it erred in doing so.

Moreover, the evidence permitted the jury to find that Howard committed the August 2014 shooting, at least in part, to further his membership in MBG. Howard's conflict with Samuel

---

[54] *Concepcion*, 983 F.2d at 381.

[55] *Id.*

[56] 797 F. App'x 34 (2d Cir. 2019) (summary order), *cert. denied*, 141 S. Ct. 662 (2020). Though we decided *Santiago-Ortiz* by nonprecedential summary order, "'[d]enying summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases.'" *United States v. Irving*, 554 F.3d 64, 78 (2d Cir. 2009) (citations omitted).

[57] *See Santiago-Ortiz,* 797 F. App'x at 36-37.

[58] A580.

stemmed entirely from MBG's rivalry with Killbrook. The fight in 2011 – when Samuel broke Howard's jaw – was part of the ongoing conflict between the two gangs. Indeed, witnesses testified that Samuel broke Howard's jaw in order to increase his (Samuel's) own status with Killbrook. Appearing to recognize this, Howard repeatedly expressed a general desire to retaliate against Killbrook for that fight. And when Howard got around to committing the shooting in 2014, he did it with another MBG member – consistent with MBG practices – on Killbrook territory.

In vacating Howard's conviction, the district court failed to view the evidence in the light most favorable to the government and overlooked or minimized evidence tending to show that Howard was motivated at least in part by his position in MBG. For instance, citing our opinion in *United States v. Thai*,[59] the district court wrote that "[t]he evidence in this case fails to show that the Shooting was consistent with MBG's operations or goals *at the time it was committed*" because the "rivalry between MBG and Killbrook had reached a standstill by August 2014."[60] We disagree with that characterization of the evidence at trial. Though there was evidence that the intensity of the rivalry may have decreased by the time of the shooting, there was evidence also to suggest that it had not subsided completely. This alone distinguishes this case from *Thai*, in which there was "no evidence from which the jury could conclude that Thai's motive for [the violent crime] was [anything] other than purely mercenary."[61] As Melendez testified, there was "tension between the

---

[59] 29 F.3d 785 (2d Cir. 1994).

[60] SPA-91 (emphasis in original).

[61] 29 F.3d at 818.

two sides" at the time of the shooting.[62] A rational juror could have weighed the extensive evidence about the rivalry – including testimony that MBG and Killbrook had a "hostile" or tense relationship at the time of the shooting – and concluded that Howard's shooting was in furtherance of the ongoing MBG/Killbrook feud and of his standing in the gang even if he had also a personal motive.

Nor was the government required to prove that the shooting was "explicitly or implicitly authorized by the gang's leaders," that Howard had a "noteworthy" position in MBG, that Howard "had any interest in becoming a leader . . . in the gang," or that Howard's status in fact was enhanced by the shooting.[63] The government was required only to adduce evidence from which the jury was entitled to conclude that a desire on Howard's part to maintain or increase his status or membership in the gang was among his motives. There was ample evidence to support such a conclusion. Among other things, Howard openly discussed his desire to retaliate against members of Killbrook and to "put in work" – *i.e.*, "[p]romote violence [and] shootings" – for MBG, which could have increased his status in the gang.[64]

Finally, the district court's reliance on the equipoise rule derived from *United States v. Glenn*[65] was misplaced. Citing *Glenn*, the district court wrote that it was obliged to "conclude that the evidence was insufficient for a reasonable juror to conclude that Howard committed the Shooting in order to maintain or increase his position in MBG" because it "'gave nearly equal circumstantial

---

[62] A455.

[63] SPA-91-94.

[64] A470, A481-82.

[65] 312 F.3d 58 (2d Cir. 2002).

support to competing explanations.'"[66]  But the equipoise rule "is of 'no matter to sufficiency analysis because it is the task of the jury, not the court, to choose among competing inferences.'"[67]  The rule applies "only where evidence 'is nonexistent or so meager' as to preclude the inferences necessary to a finding favorable to the government."[68]  For the reasons described above, that is not the case here.  Accordingly, we hold that the evidence was sufficient to sustain Howard's conviction on Count Six and that the jury's verdict with respect to this count should stand.

### 2. Count Twelve – Firearm In Furtherance of Crime of Violence

The district court vacated also the conviction on Count Twelve, which charged Howard with using a firearm during and in relation to, or in furtherance of, the MBG racketeering conspiracy and VICAR counts in violation of 18 U.S.C. § 924(c).  Because the district court erred in entering a judgment of acquittal with respect to Count Six, it erred also when it entered its judgment of acquittal on Count Twelve.

Section 924(c) proscribes the use or possession of a firearm "during and in relation to" or "in furtherance of" "any crime of violence."[69]  The statute defines "crime of violence" in two

---

[66] SPA-96.

[67] *Aquart*, 912 F.3d at 44 (quoting *United States v. MacPherson*, 424 F.3d 183, 190 (2d Cir. 2005)).

[68] *Id.* at 44-45 (quoting *United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013)).

[69] 18 U.S.C. § 924(c)(1)(A); *see also Smith v. United States*, 508 U.S. 223, 237 (1993).

subparts known as the "elements clause" and the "residual clause."[70] The elements clause provides that a crime of violence is "an offense that is a felony" and "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."[71] In *United States v. Davis*, the Supreme Court struck down the residual clause as unconstitutionally vague.[72]

The superseding indictment alleged that the predicate crimes of violence for Count Twelve were both Count One (the RICO conspiracy count) and Count Six (the VICAR count).[73] After vacating Count Six, the district court vacated Count Twelve because it found that Count Twelve now "rest[ed] solely on [Howard's] conviction for Count One" and that the evidence at trial was insufficient to establish that Howard used a firearm in furtherance of the MBG racketeering conspiracy charged in Count One.[74]

In light of *Davis*, the government does not here contend that Count One is a valid predicate crime of violence to sustain a conviction under 18 U.S.C. § 924(c). But, post-*Davis*, the VICAR offense in Count Six remains a valid predicate crime of violence as defined under the elements clause. It is premised on the New York offense of assault in the second degree, which categorically "has as an element the use, attempted use, or threatened use of physical force against

---

[70] *United States v. Davis*, 139 S. Ct. 2319, 2324 (2019).

[71] *Id.*

[72] *Id.* at 2336.

[73] A18.

[74] SPA-97-98.

the person or property of another."[75]  Accordingly, in view of our holding today that the evidence was sufficient to sustain the conviction on Count Six, the conviction on Count Twelve also should stand.

## II

We turn to the proper disposition of these appeals.

The partial grant of Howard's Rule 29 motion resulted in the entry of a judgment of conviction that reflected a conviction only on Count One.  In view of our conclusion that the grant of the Rule 29 motion was erroneous, Howard should have been sentenced on all three counts of conviction and judgment entered accordingly.[76]  As it is not clear that the district court would have imposed the same sentence for the convictions on all three counts as it did on Count One only, resentencing is necessary.[77]  Consequently, the judgment entered on June 11, 2020 must be vacated.

---

[75] 18 U.S.C. § 924(c)(3)(A); N.Y. Penal L. § 120.05(2); *see also United States v. Tabb*, 949 F.3d 81, 84-85 (2d Cir. 2020), *cert. denied*, No. 20-579, 2021 WL 2519097 (June 21, 2021) (§ 120.05(2) is a crime of violence under force clause of  U.S.S.G. § 4B1.2(a)); *Singh v. Barr*, 939 F.3d 457, 462-64 (2d Cir. 2019) (§  120.05(2) is a crime of violence under "force clause" in 18 U.S.C. § 16(a)); *United States v. Walker*, 442 F.3d 787, 788 (2d Cir. 2006) (§ 120.05(2) is a violent felony under the force clause of 18 U.S.C. § 924(e)(2)(B)(i)).

[76] Howard claimed in his Rule 29 motion that the government had failed to adduce evidence that he "had a position" in MBG, thus perhaps suggesting that this too was a basis for setting aside the VICAR conviction. Def. Post-Trial Mem. at 28, *United States v. Howard*, No.17-cr-611 (S.D.N.Y. May 13, 2019), ECF No. 486.  The district court noted, however, that there was evidence that Howard had been a member of MBG for more than a decade. SPA-93.  Howard neither disputes that conclusion nor presses on appeal any contention that he lacked a position in the gang.  Accordingly, there is no remaining issue for consideration here or below with respect to the Rule 29 motion.

[77] *See United States v. Kirsch*, 903 F.3d 213, 233 (2d Cir. 2018) (remanding for resentencing after vacating judgment of conviction "[i]n order 'to give the district court an opportunity to reevaluate the sentence[ ] in this changed light'" (quoting *United States v. Petrov*, 747 F.2d 824, 832 (2d Cir. 1984) (alteration in original))).

**CONCLUSION**

Based on the foregoing, the district court's order of November 4, 2019, insofar as it set aside the jury verdict finding Howard guilty on the VICAR and firearm counts, was erroneous. We therefore **REVERSE** so much of that order as did so and **VACATE** the judgment of conviction entered on June 11, 2020, which did not reflect the convictions on those two counts, and **REMAND**. The district court is instructed on remand to reinstate the entire jury verdict, to resentence Howard in light of the entire jury verdict, and to enter a new judgment of conviction.