21-1486-cr
*United States v. Davis*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of July, two thousand twenty-three.

PRESENT:
> JOHN M. WALKER, JR.,
> EUNICE C. LEE,
> BETH ROBINSON,
> *Circuit Judges.*

---

UNITED STATES OF AMERICA,

> *Appellee,*

v.                                                                                          No. 21-1486

KAREEM DAVIS,

> *Defendant-Appellant.*\*

---

FOR APPELLEE:                                                     JORDAN ESTES
                                                                              (Christopher Clore,

---

\* The Clerk of Court is respectfully directed to amend the caption accordingly.

Alexandra Rothman, Stephen J. Ritchin, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

FOR DEFENDANT-APPELLANT:                    RICHARD H. ROSENBERG, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Schofield, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the June 7, 2021 judgment of the district court is **AFFIRMED**.

Defendant-Appellant Kareem Davis appeals from a judgment of conviction entered by the United States District Court for the Southern District of New York (Schofield, *J.*) after a jury found him guilty of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d) (Count One); murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1) (Count Two); and using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Three). The charges stemmed from Davis's alleged membership in Killbrook, a gang that operated in

and around the Mill Brook Houses housing project in the South Bronx, and his participation (alongside his brother, Gary Davis, a Killbrook member) in the April 2011 murder of Bolivia Beck, the girlfriend of rival gang member Joey Colon, when the bullet intended for Colon struck Beck.

We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal. Davis's appeal as it concerns his Count Three conviction is addressed in an opinion filed concurrently with this summary order. We write separately here to address Davis's remaining arguments as to the sufficiency of the evidence with respect to Counts One and Two, and the admissibility of certain witness testimony.

## I. Sufficiency of the Evidence

Davis challenges the sufficiency of the evidence in support of his convictions for racketeering conspiracy (Count One) and murder in aid of racketeering (Count Two). "We review preserved claims of insufficiency of the evidence *de novo.*" *United States v. Atilla*, 966 F.3d 118, 128 (2d Cir. 2020). A defendant challenging his conviction on sufficiency grounds "face[s] a heavy burden, as the standard of review is exceedingly deferential to the jury's apparent determinations." *United States v. Flores*, 945 F.3d 687, 710 (2d Cir. 2019) (internal quotation marks omitted). The court must uphold a jury's verdict if, "credit[ing] every inference that could

3

have been drawn in the government's favor," and "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Ho*, 984 F.3d 191, 199 (2d Cir. 2020) (internal quotation marks and alteration omitted). Applying this standard, we find no basis to disturb Davis's challenged convictions.

### a. Racketeering Conspiracy (Count One)

The conspiracy provision of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(d), "proscribes an agreement to conduct or to participate in the conduct of [an] enterprise's affairs through a pattern of racketeering activity." *United States v. Pizzonia*, 577 F.3d 455, 462 (2d Cir. 2009). "[T]he establishment of an enterprise is not an element of the RICO conspiracy offense," therefore the government "need only prove that the defendant knew of, and agreed to, the general criminal objective of a jointly undertaken scheme." *United States v. White*, 7 F.4th 90, 98–99 (2d Cir. 2021) (internal quotation marks omitted); *see also United States v. Arrington*, 941 F.3d 24, 36–37 (2d Cir. 2019).

Davis argues that the evidence was insufficient to prove that Killbrook had general criminal objectives or that he agreed to participate in them. But the

4

evidence adduced at trial permitted the jury to find that Killbrook operated as a violent, criminal gang and that Davis possessed the requisite awareness of and agreed to "the general contours of the conspiracy." *White*, 7 F.4th at 99 (internal quotation marks omitted).

Significant evidence established that Killbrook had general criminal objectives. Gary Davis, Davis's brother, testified that he committed murder, "[s]hootings, cuttings, fights, [and] robberies" as a Killbrook member. App'x 79. Testimony showed that members of Killbrook were involved in drug dealing and that an objective of the gang was to sell "[w]eed and crack" in the "[d]own the block" section of Mill Brook Houses. *Id.* at 107. Davis argues that the evidence did not establish that Killbrook members' drug dealing was connected to the gang because the government did not prove that members shared drugs, supplies, customers, or profits. But our law does not require such proof to establish a general criminal objective of drug dealing. *See United States v. Delgado*, 972 F.3d 63, 79–80 (2d Cir. 2020), *as amended* (Sept. 1, 2020) (finding general criminal objective of drug dealing when "[g]ang members worked together to distribute drugs in their territory, organizing themselves into a loose hierarchy of roles and responsibilities"). The evidence sufficiently established the cohesion of Killbrook members' drug dealing. *See, e.g.*, App'x 107 (Killbrook did not sell drugs "up the

5

block" because "that wasn't [its] territory to sell," where rival gang Mill Brook Gangstas ("MBG") operated).

Gary Davis also testified to numerous armed robberies that he committed with other Killbrook members, often in connection with the gang's drug dealing. Additionally, he testified that the murder of Beck, for which Davis was charged and which we address below, resulted from Gary Davis's plan to kill Colon, a member of rival MBG, due to inter-gang conflict. Further, trial testimony established that committing crimes on behalf of Killbrook could increase members' status, such as by helping them become a "big K," or "a high-ranking member." *Id.* at 89. This evidence was sufficient for any rational juror to conclude that Killbrook members shared general criminal objectives "that included murder, robbery, and the distribution of drugs." *Delgado*, 972 F.3d at 80; *see also White*, 7 F.4th at 99 (evidence sufficient to establish MBG's general criminal objective when members "collectively engaged in violence, including fights and shootings" against Killbrook); *United States v. Applins*, 637 F.3d 59, 77 (2d Cir. 2011) (evidence sufficient to establish an enterprise when gang members shared purpose of selling drugs, protecting gang's drug market, and defending members through violence within gang's territory).

The government also adduced sufficient evidence that Davis knew of and agreed to Killbrook's criminal purpose. Three witnesses identified Davis as a Killbrook member. Davis had a "KB" tattoo, and he publicized his affiliation with the gang on his Facebook profile. Killbrook members testified that Davis sold drugs in Killbrook's "down the block" territory. Contrary to Davis's argument, the fact that he shared customers with MBG or sold drugs outside of Mill Brook Houses does not necessarily suggest that his "down the block" dealing was not conducted on behalf of Killbrook. *See Applins*, 637 F.3d at 77. Witnesses also testified that Davis participated in armed robberies with Killbrook members. Davis contends that these robberies were isolated and sporadic, but the government introduced at trial a letter in which Gary Davis identified Davis as part of the "team" of "people that [he] always rob[bed] people with." App'x 107. Finally, as we explain in the following section, the evidence established Davis's participation in the Killbrook-related murder of Beck. All of this evidence, considered "in conjunction, not in isolation," *Atilla*, 966 F.3d at 128 (internal quotation marks omitted), was sufficient for any rational juror to find that Davis knowingly agreed to "the general contours" of Killbrook's shared criminal scheme so as to sustain his racketeering conspiracy conviction, *White*, 7 F.4th at 99. *See Delgado*, 972 F.3d at 80 (finding that defendant knowingly agreed to join and

7

facilitate racketeering scheme where evidence identified him as an active gang member and showed his participation in selling drugs and fighting rival gangs).[1]

Davis argues that even if there was sufficient evidence of his knowing agreement to participate in a racketeering conspiracy, the government did not prove that his relevant conduct took place within the applicable limitations period. The government correctly responds that Davis cannot raise his statute-of-limitations defense for the first time on appeal. *Musacchio v. United States*, 577 U.S. 237, 248 (2016) ("When a defendant does not press [a statute-of-limitations] defense [in the district court], there is no error for an appellate court to correct— and certainly no plain error."). Davis's attempt, in reply, to reframe his limitations argument as a sufficiency challenge is not properly before this court because it was not raised in his opening brief. *Gross v. Rell*, 585 F.3d 72, 95 (2d Cir. 2009). In any event, we find the argument meritless, because the evidence supported that Davis participated in racketeering activity within the preceding ten years. *See* 18 U.S.C. § 1961(5).

---

[1] The government additionally argues that the evidence was sufficient to establish that Killbrook operated as an association-in-fact enterprise, and thus "we need inquire only whether an alleged conspirator knew what the other conspirators were up to or whether the situation would logically lead an alleged conspirator to suspect he was part of the larger enterprise." *White*, 7 F.4th at 99 (internal quotation marks and alteration omitted). Because we find that the evidence was sufficient to convict Davis of racketeering conspiracy even absent the establishment of an enterprise, we do not reach this argument.

### b. Murder of Bolivia Beck (Count Two)

A "conviction for murder in aid of racketeering require[s] [a] finding[] of . . . a general purpose to maintain or increase [one's] position in the criminal enterprise." *United States v. Velez*, 170 F. App'x 146, 147 (2d Cir. 2006) (summary order) (internal quotation marks and alteration omitted); *see* 18 U.S.C. § 1959(a).

Davis first argues that the government failed to prove that Beck's murder was committed for the purpose of maintaining or increasing his (or any perpetrator's) position in Killbrook. However, multiple witnesses testified that the shooting that killed Beck was intended to target Colon as retribution for Colon's shooting a "down the block" associate, an event that ignited the MBG-Killbrook rivalry. Although Gary Davis testified that Davis was already a "big K" at the time of Beck's murder, he also testified that Killbrook members could "get recognition" for "shooting at people" and that he believed killing Colon would "boost[]" his and Davis's status in the gang. App'x 89, 103. This evidence was sufficient to establish that the participants committed the murder at least in part to maintain or advance their standing in Killbrook. *See White*, 7 F.4th at 103 (the government need only prove "that a desire on [the defendant's] part to maintain or increase his status or membership in the gang was *among* his motives" (emphasis added)).

9

Davis next argues that even if there was sufficient evidence to prove the other elements of the murder in aid of racketeering charge, the evidence that he was involved in the shooting that killed Beck "was simply incredible on its face." Appellant's Br. 34. However, sufficient evidence established that Davis was a participant in the shooting. Three witnesses, corroborated by each other and other evidence, testified that Davis was the second shooter alongside his brother. Davis contends that these witnesses offered incredible, inconsistent, or self-interested testimony. But this court "will not attempt to second-guess a jury's credibility determination on a sufficiency challenge." *United States v. Florez*, 447 F.3d 145, 156 (2d Cir. 2006). Davis "simply repeats facts and arguments already presented to the jury," *id.*, and the court "must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses," *United States v. O'Connor*, 650 F.3d 839, 855 (2d Cir. 2011) (internal quotation marks omitted). It was well within the province of the jury to resolve the evidence to find that Davis was a shooter in Beck's murder.

## II.    Admission of Testimony of Lavena Beck

Davis argues that the district court abused its discretion in admitting the "hearsay" testimony of Beck's sister, Lavena Beck, that Colon had told her several weeks after Beck's murder that Davis was the second shooter. "We review a

district court's evidentiary rulings under a deferential abuse of discretion standard, and we will disturb an evidentiary ruling only where the decision to admit or exclude evidence was manifestly erroneous." *United States v. McGinn*, 787 F.3d 116, 127 (2d Cir. 2015) (internal quotation marks omitted).

The district court's admission of Lavena Beck's testimony was permitted under Federal Rule of Evidence 801(d)(1)(B)(i), which provides that a witness's prior consistent statement is not hearsay when offered "to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying." Fed. R. Evid. 801(d)(1)(B)(i). A prior consistent statement "need not be proffered through the testimony of the declarant but may be proffered through any witness who has firsthand knowledge of the statement." *United States v. Caracappa*, 614 F.3d 30, 39 (2d Cir. 2010).

Here, Lavena Beck's testimony that Colon identified Davis as a shooter in 2011 rebutted the defense's implication, extensively developed during Colon's cross-examination, that Colon fabricated his identification of Davis in 2017 to avoid additional jail time on new federal charges. The district court's admission of this testimony was a straightforward application of the Rule with which we find no abuse of discretion. *See id.* at 39–40 (finding no abuse of discretion in admission of prior consistent statement when defense had "expressly or impliedly suggested

11

that [a witness's] testimony was fabricated because of his desire to get out of prison" and the statement was made before a motive to fabricate arose); *United States v. Burden*, 600 F.3d 204, 229–30 (2d Cir. 2010) (affirming admission of witness's prior identification of shooter where defense had suggested that trial testimony was a recent fabrication due to earlier inconsistent statements).[2]

Davis also argues that the district court erred in applying Federal Rule of Evidence 403 because the probative value of Lavena Beck's statement was substantially outweighed by a danger of unfair prejudice to Davis. *See* Fed. R. Evid. 403. We find no abuse of discretion in the district court's weighing of the probative value of and any potential unfair prejudice arising from this testimony. *See United States v. Monsalvatge*, 850 F.3d 483, 493 (2d Cir. 2017) ("We review such rulings deferentially, mindful of a district court's superior position to assess relevancy and to weigh the probative value of evidence against its potential for unfair prejudice." (internal quotation marks and alteration omitted)).

We have considered Davis's other arguments and find them to be without merit. For the reasons set forth herein and in the accompanying opinion filed

---

[2] In addition, Davis does not challenge the district court's alternative basis for admitting Lavena Beck's testimony pursuant to Rule 801(d)(1)(C), as an identification of Davis "as someone [Colon] perceived earlier." Fed. R. Evid. 801(d)(1)(C). This unchallenged alternative basis for admitting Lavena Beck's testimony constitutes an independent basis for affirming the district court's decision to admit the testimony. *See McCarthy v. S.E.C.*, 406 F.3d 179, 186 (2d Cir. 2005).

concurrently with this summary order, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

13